UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATANYA ABERRA,

                          Plaintiff,

          -v-

THE CITY OF NEW YORK,

                          Defendant.

CIVIL ACTION NO.: 18 Civ. 01138 (LAK) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE LEWIS A. KAPLAN**, United States District Judge:

          Before the Court is the motion of <u>pro se</u> plaintiff Natanya Aberra ("Aberra") for leave to

file a second amended complaint (ECF No. 48) (the "Motion to Amend") and the cross-motion of

Defendant City of New York (the "City") to enforce a settlement agreement (ECF No. 65) (the

"Motion to Enforce").  The City is seeking to enforce against Aberra an oral agreement to settle

this civil rights action for $400, an agreement the City claims to have reached with Aberra's

former attorney, who has ignored this Court's orders, failed to appear, and abandoned Aberra to

litigate this matter on his own.  For the reasons set forth below, the Court respectfully

recommends that the Motion to Enforce, which is logically analyzed first in these circumstances,

be DENIED and that the Motion to Amend be GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

          On February 8, 2018, Aberra, then represented by Lawrence Lewis, Esq. ("Lewis"), filed a

complaint asserting false arrest and municipal liability claims pursuant to 42 U.S.C. § 1983 against

the City arising out of his arrest on March 9, 2016 (the "2016 Arrest").  (ECF Nos. 1, 8).  On July 13,

2018, Aberra filed an amended complaint (the "FAC"), adding Sergeant Diana Ingram,[1] one of the arresting officers, as a defendant.  (ECF No. 23).

### A.   Factual Background

The Court's summary of the facts is drawn from Aberra's pleadings, which the Court has liberally construed, given his pro se status.  See McCloud v. Mayers, No. 03-0236, 2005 WL 181649, at *1 (2d Cir. Jan. 25, 2005) (summary order) ("This Court construes the papers of pro se litigants liberally."); Massie v. Metro. Museum of Art, 651 F. Supp. 2d 88, 93 (S.D.N.Y. 2009) (noting that courts in the Second Circuit "apply[] a more flexible standard" to pro se submissions).

### 1.   The 2016 Arrest

On March 9, 2016, Aberra was attending a seminar at Grant and Associates, an employment agency located at 55 West 125th Street.  (ECF No. 23 at 2).  While walking to the seminar, he accidentally made contact with a woman as he passed her in the hallway.  (Id.)  The woman accused Aberra of unwanted sexual contact, and two Grant and Associates employees began harassing him about the incident.  (Id.)  In response, Aberra called the New York City Police Department (the "NYPD"), hoping that the NYPD would stop the harassment or assist him in filing a complaint against the Grant and Associates employees.  (Id.)  When NYPD officers arrived on the scene, they interviewed the woman, ignored Aberra, and made no effort to inquire into his version of events, although he tried several times to speak with them.  (Id. at 3).  Despite his claims of harassment and video evidence of the contact Aberra had with the woman, Aberra was arrested.  (Id.)

---

[1] Sergeant Ingram, who was known as Officer Florenciani at the time of the July 2016 arrest, was promoted after this action commenced and changed her last name.  The Court will therefore refer to her as Sergeant Ingram throughout this Report and Recommendation.

After his arrest, Aberra was charged with Sexual Abuse in the Third Degree, in violation of New York Penal Law § 130.55, and Harassment in the Second Degree, in violation of New York Penal Law § 240.26(2).  (ECF No. 32 at 3–4).  Aberra spent approximately nineteen hours jailed in the local precinct before he was arraigned on a plea of not guilty and released on March 10, 2016.  (ECF No. 23 at 3).

On December 20, 2016, Aberra appeared before Justice Pandit-Durant for a proceeding in the New York City Criminal Court regarding the 2016 Arrest.  (ECF No. 23 at 4).  Justice Pandit-Durant reviewed the surveillance footage of the incident and determined that there was no sexual contact between Aberra and the woman.  (Id.)  As a result, the court dismissed the charges against Aberra with prejudice and sealed the case pursuant to New York Criminal Procedure Law Section 160.50.  (Id.; ECF No. 8-1 at 2).

**B.    Procedural Background**

**1.    Exchange of information about the 2016 Arrest**

On February 8, 2018, Aberra filed this Section 1983 action initially naming only the City as a defendant.  (ECF No. 1).  On June 1, 2018, the City produced to Lewis a copy of Aberra's NYPD arrest report, which contained the names of the arresting officer (Sergeant Ingram) and the supervising sergeant who approved the arrest.  (ECF No. 70 ¶¶ 4–5).

On July 13, 2018, Aberra, still represented by Lewis, filed the FAC, adding Sergeant Ingram as a defendant, and alleging claims of false arrest and imprisonment, negligence, and "emotional and physical pain and suffering."  (ECF No. 23).

On August 17, 2018, the City served Aberra with its initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) and the mediation plan requirements (the "Initial Disclosures"), in

which the City listed the names of the NYPD officers who were present at Aberra's arrest as potential witnesses whom the City might use to support its defenses.  (ECF No. 70 ¶¶ 7–8; ECF No. 70-1).  After the City served its Initial Disclosures, Aberra did not seek to amend the FAC to add as defendants any of the other officers identified in the Initial Disclosures.  In fact, Lewis informed the City in writing that he would not be amending the FAC based on the Initial Disclosures.  (ECF No. 68-1 at 1).

### 2.  Settlement negotiations

In August 2018, Lewis sent the City a letter containing a settlement demand of $85,000, to which the City did not respond (the "August 2018 Demand").  (ECF No. 68-1).  On October 10, 2018, the parties attended a mediation session, at which Aberra was present, but the parties did not reach an agreement.  (ECF No. 66 at 5–6).

On October 30, 2018, Lewis filed a letter with the Court reporting that he and counsel for the City had continued negotiating after the mediation and reached an agreement (the "October 2018 Letter").  (See ECF No. 36).  The October 2018 Letter stated in full:

> I represent the Plaintiff, Mr. Aberra in the above captioned matter.  The mediation [f]ailed to resolve the matter but I subsequently spoke with Mr. Shah of the city's corporation counsel's office who had been assigned to the case.  This discussion resulted in a settlement with the City of New York.  Accordingly, [Sergeant Ingram] is no longer a Defendant in this case and a future status conference will not be needed.

(Id.)  On November 21, 2018, the City filed a proposed stipulation of voluntary dismissal as to Aberra's claims against Sergeant Ingram, executed by Lewis and counsel for the City (ECF No. 38), which was so-ordered by the Honorable Lewis A. Kaplan on November 26, 2018 (the "Stipulation").  (ECF No. 40).  The same day, the City also filed a status letter (in which Lewis did not join) (the "November 2018 Letter").  (ECF No. 39).  The November 2018 Letter asserted that

the parties had reached a settlement agreement, and "[a]s part of the agreement, plaintiff agreed to first voluntarily dismiss all claims against [Sergeant Ingram] . . . with prejudice." (Id.) The letter continued, "[u]pon endorsement [of the Stipulation] by the Court, the parties will subsequently file a Stipulation of Dismissal with respect to defendant City." (Id.)

On November 27, 2018, the City emailed Lewis a proposed stipulation of dismissal as to Aberra's claims against the City as well as a general release and a draft agreement (the "Draft Settlement Agreement") that purportedly evidenced the terms counsel had orally negotiated (the "Oral Settlement Agreement"). (ECF No. 67 ¶ 11; ECF No. 68-2; ECF No. 68-3). The Oral Settlement Agreement contemplated that the City would pay Aberra $400 in exchange for the "dismissal of all the claims against the defendant" (which was not defined), and for a "release [as to] defendant City of New York." (ECF No. 68-3 at 4). Neither Lewis nor Aberra executed a stipulation of dismissal as to the City, the general release, or the Draft Settlement Agreement, and neither otherwise responded to the City's email. (ECF No. 66 at 6–7).

The City represented to this Court that, on January 28, 2019, Lewis informed the City that Aberra had terminated him as his attorney. (ECF No. 66 at 7; ECF No. 67 ¶ 12). The City also represented to the Court that, on April 1, 2019, Lewis again told the City's counsel that he was no longer representing Aberra and intended to withdraw as counsel. (ECF No. 44 at 2). In anticipation of filing a joint letter with the Court, on November 18, 2019, the City's counsel again contacted Lewis, who, the City says, reiterated that he no longer represented Aberra. (ECF No. 44 at 3). On November 25, 2019, Aberra informed the City that he intended to proceed pro se. (Id.) Based on the City's representations, on December 4, 2019, the Court ordered Lewis to file a notice of withdrawal, but he did not do so. (ECF No. 45). After the City and Aberra submitted

on December 3, 2019 a joint status report, which included statements by Aberra himself, (the "December 2019 Status Report"), the Court directed the City to send the settlement paperwork to Aberra directly.  (ECF No. 45).  The last direct communication Lewis made to this Court was the October 2018 Letter, and the Court has not heard from him since.

On December 6, 2019, after receiving the settlement paperwork from the City, Aberra filed a letter objecting to the City's statements in the December 2019 Status Report.  (ECF No. 46). Aberra explained that he never authorized Lewis to settle on the terms the City described in the Oral Settlement Agreement, and explicitly told Lewis that he did not want to settle any of his claims.  (Id.)  He stated that he first learned of the Stipulation dismissing Sergeant Ingram in July 2019 when he contacted a new attorney about possibly representing him in this action.  (Id.) Aberra stated that Lewis did not advise him about the Oral Settlement Agreement or provide him with the Stipulation or the Draft Settlement Agreement, and explained that he wanted to proceed with his claims.  (Id.)

### 3.  Second amended complaint

On December 16, 2019, Aberra filed a second amended complaint (the "SAC") (ECF No. 48), which the Court construed as a motion for leave to amend to:  (1) restore Sergeant Ingram as a defendant; (2) add three new John Doe defendants (the other police officers present at the 2016 Arrest); (3) add allegations concerning damages and remedies; and (4) amend the monetary demand for each cause of action.  (ECF No. 49).  On December 18, 2019, the Court ordered the City to respond to Aberra's filing.  (Id.)

On January 28, 2020 the Court held a settlement conference with the parties.  The parties did not reach an agreement, and the Court thereafter set a briefing schedule for Aberra's Motion to Amend and the City's Motion to Enforce.  (ECF No. 59).

## II.   DISCUSSION

Because the Court's recommendation regarding the Motion to Enforce impacts its recommendation on the Motion to Amend, the Court will first address the former.

### A.   Motion to Enforce

The City argues that the Oral Settlement Agreement is binding and enforceable on all parties and asks the Court to enforce the Oral Settlement Agreement and dismiss Aberra's claims with prejudice.  (ECF No. 66).  Aberra insists that he did not provide Lewis with authority to settle his claims on the terms set forth in the Oral Settlement Agreement and did not intend to settle his claims.  (ECF No. 80).

#### 1.   Applicable law

"An agreement to end a lawsuit is construed according to contract principles."  United States v. Sforza, 326 F.3d 107, 115 (2d Cir. 2003); Hostcentric Techs. Inc. v. Republic Thunderbolt, LLC, No. 04 Civ. 1621 (KWA) (AJP), 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law.") (internal citations omitted).  The Court "has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it."  Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974).

### a)   Settlement authority

In a case arising under federal law, an attorney's authority to bind his client to a settlement agreement is governed by federal law.  See Jian Wang v. IBM, 634 F. App'x 326 (2d Cir. 2016); Artha Mgmt., 91 F.3d 326, 328 (2d Cir. 1996); Alvarez v. City of New York, 146 F. Supp. 2d 327, 334 (2d Cir. 2001).

A client holds ultimate authority regarding whether to settle a case.  Vesterhalt v. City of New York, 667 F. Supp. 2d 292, 302–03 (S.D.N.Y. 2009); Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) ("The decision to settle is the client's to make, not the attorney's.").  "Ultimately, however, because of the strong public policy favoring settlements, an attorney of record who enters into a settlement agreement on behalf of his client is presumed to have the authority to do so, and a party who challenges such an attorney's authority to settle bears the burden of proving with affirmative evidence that the attorney lacked authority."  Rahman v. Kaplan Cornelia, Inc., No. 12 Civ. 09095 (SN), 2014 WL 541851, at *8 (S.D.N.Y. Feb. 11, 2014) (citing Artha Mgmt., 91 F.3d at 329); see also Jian Wang, 634 F. App'x at 326–27 ("We presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so.  In accordance with that presumption, any party challenging an attorney's authority to settle the case . . . bears the burden of proving by affirmative evidence that the attorney lacked authority.") (internal citations omitted); United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993) ("The burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial").

The attorney-client relationship is governed by agency principles, and an attorney may only consummate a settlement agreement with opposing counsel if he has actual or apparent

authority to settle the claim.  See Foster v. City of New York, No. 96 Civ. 9271 (PKL), 2000 WL

145927 at *3 (S.D.N.Y. Feb. 7, 2000); Berwin v. Nat'l R.R. Passenger Corp., 152 F.3d 917, 1998 WL

398803, at *1 (2d Cir. June 8, 1998) (summary order); see Teamsters, 986 F.2d at 20 ("Whether

an attorney possesses actual authority to settle rests on an examination of the dealings between

the attorney and the client to determine whether the attorney's actual authority 'may be inferred

from the words or conduct of a client which the client had reason to know would be regarded by

the attorney as authorization to settle.'"  Rahman, 2014 WL 541851, at *8 (quoting Joseph v.

Worldwide Flight Servs., Inc., 480 F. Supp. 2d 646, 653 (E.D.N.Y. 2007)); United States v. Manning,

107 F.3d 5, 1997 WL 62973, at *1 (2d Cir. Feb. 12, 1997) (citing Teamsters, 986 F.2d at 20).  "The

Court must therefore determine whether Plaintiff had reason to know that, from his words or

conduct in his conversation with his counsel, his counsel would conclude that he had been given

authority to settle[.]"  Valez v. City of New York, No. 08 Civ. 3875 (DLC), 2009 WL 3170098, at *7

(S.D.N.Y. Oct. 1, 2009).  In addition, "the Court must consider those statements and conduct from

the client's perspective, rather than the attorney's."  Id. at *8; see also Artha Mgmt., 91 F.3d at

329 (issue of actual authority turns on what "the principal has reason to know") (internal citations

omitted).

    Apparent authority, on the other hand, "is normally created through the words and

conduct of the principal as they are interpreted by a third party, and cannot be established by

the actions or representations of the agent."  Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d

282, 289 (2d Cir. 2003) (internal citations omitted).  "Thus, an attorney cannot create apparent

authority by his own actions or representations, and by merely retaining an attorney, a client

does not create apparent authority for the attorney to settle the client's case." Rahman, 2014 WL 541851, at *8 (internal citations omitted).

### b)      Choice of law

The Second Circuit has not resolved "the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement." Acun v. Merrill Lynch, Pierce, Fenner, & Smith, No. 18 Civ. 7217 (GBD) (SN), 2020 WL 3002225, at *2 (S.D.N.Y. Jan. 15, 2020), adopted by 2020 WL 995887 (S.D.N.Y. Mar. 2, 2020); see also Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007); Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir. 1997).  Thus, the Court will consider the enforceability of the Oral Settlement Agreement under both New York law and federal common law.  See Meltzer v. Stier, No. 15 Civ. 6184 (KPF), 2017 WL 5032991, at *4 (S.D.N.Y. Nov. 2, 2017) (considering enforceability of settlement agreement under both New York state law and federal common law); see also Can't Stop Prods., Inc. v. Sixuvus, Ltd., No. 17 Civ. 6513 (CS) (LMS), 2019 WL 5773739, at *5 (S.D.N.Y. Jan. 18, 2019), modified on other grounds and adopted by 2019 WL 1397196 (S.D.N.Y. Mar. 28, 2019) (applying both New York state law and federal common law but noting that a "majority of district courts have applied only federal common law in federal question cases when a motion is filed to enforce an oral settlement agreement") (internal citations omitted).

### i.      New York law

New York's Civil Practice Law and Rules § 2104 provides that,

[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon

> a party unless it is in a writing subscribed by him [or her] or his [or her] attorney
> or reduced to the form of an order and entered.

N.Y. C.P.L.R. § 2104 (McKinney 2003) ("Rule 2104").   Thus, New York law "requires that a

settlement agreement be set forth in writing or entered into the record by counsel in open

court." <u>Meltzer</u>, 2017 WL 5032991, at *4.   An oral settlement agreement is also enforceable

where it "substantially complies" with Rule 2104.  <u>See</u> <u>Alvarez</u>, 146 F. Supp. 2d at 338 ("New York

courts view the 'open court' requirement of CPLR § 2104 as a technical term that refers to the

formalities attendant upon documenting the fact of the stipulation and its terms, and not to the

particular location of the courtroom itself.   Accordingly, an oral settlement agreement is

enforceable so long as it is in substantial compliance with § 2104.") (internal citations omitted).

### ii.    Federal common law

"To determine under federal common law whether the parties intended to be bound to

an oral or unsigned settlement agreement, courts in this Circuit apply the four-factor <u>Winston</u>

test[.]" <u>Meltzer</u>, 2017 WL 5032991, at *4 (citing <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78,

80 (2d Cir. 1985)).   Courts applying <u>Winston</u> consider whether:

> ([1]) there has been an express reservation of the right not to be bound in the
> absence of a writing; ([2]) there has been partial performance of the contract;
> ([3]) all of the terms of the alleged contract have been agreed upon; [and] ([4]) the
> agreement at issue is the type of contract that is usually committed to writing.

<u>Id.</u>   While no single factor is determinative, courts often give greater weight to the first factor.

<u>Pullman v. Alpha Media Publ'g, Inc.</u>, No. 12 Civ. 1924 (PAC) (SN), 2014 WL 5043319, at *10

(S.D.N.Y. Mar. 14, 2014) ("[The first <u>Winston</u>] factor looks to the language of the agreement and

is thus the most important consideration.") (internal citations omitted) <u>modified</u> <u>on</u> <u>other</u>

grounds and adopted by 2014 WL 5042250 (S.D.N.Y. Sept. 10, 2014), aff'd 624 F. App'x 774 (2d Cir. 2015) (summary order).

### a. Expressed intent

The first Winston factor "concerns whether the parties intended to consent to a binding agreement in the absence of a signed writing." Pullman, 2014 WL 5043319, at *10. Courts look to "the words and deeds [of the parties] which constitute objective signs in a given set of circumstances" which "may be shown by oral testimony or by correspondence, or other preliminary or partially complete writings." Winston, 777 F.2d at 80–81 (internal citations omitted).

Courts give "considerable weight" to any "indications in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed." Ciaramella, 131 F.3d at 324.

> Although this factor is phrased in terms of "express" reservations, courts — including the court in Winston — also analyze whether the particular facts and circumstances of the case — such as the nature of the negotiations or the language of any draft agreements — demonstrate an implied reservation of the right not to be bound until the execution of a written agreement.

Lindner v. Am. Express Corp., No. 06 Civ. 3834 (JGK), 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007).

### b. Partial performance

"When analyzing partial performance, courts look to whether any of the terms agreed to in settlement discussions have been performed." Goldstein v. Solucorp Indus., Ltd., No. 11 Civ. 6227 (VB) (PED), 2017 WL 1078739, at *8 (S.D.N.Y. Feb. 10, 2017), adopted by 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017). "Partial performance is an unmistakable signal that one party believes

there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." Id. (internal citations omitted).  A party's drafting of a written agreement usually does not constitute partial performance where one party's responsibility to draft the settlement was not a term of the oral agreement.  Can't Stop, 2019 WL 5773739, at *7; Delgrosso v. City of New York, No. 11 Civ. 4876 (MKB), 2013 WL 5202581, at *8 (E.D.N.Y. Sept. 13, 2013) ("Although the preparation of settlement paperwork may provide some indication of the preparer's belief that a settlement has been reached, it does not constitute a change in position, and no substantive rights of the parties have been affected in any way by the mere drafting of the documents."); but see Wesley v. Corr. Officer Badge No. 9417, No. 05 Civ. 5912 (HB), 2008 WL 41129, at *3 (S.D.N.Y. Jan. 2, 2008) (finding partial performance of settlement agreement where defendants "prepared and finalized all of the necessary paperwork and mailed them to Plaintiff for his signature").

### c.   Agreement to all terms

"The third prong of the Winston framework asks whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to."  In re Lehman Bros. Holdings Inc., 739 F. App'x 55, 57 (2d Cir. 2018) (summary order) (internal citations omitted).  The Second Circuit has held "that the existence of even 'minor' or 'technical' points of disagreement in draft settlement documents [are] sufficient to forestall the conclusion that a final agreement on all terms had been reached."  Ciaramella, 131 F.3d at 325 (citing Winston, 777 F.2d at 82–83).

### d.  **Agreement in writing or on the record**

The Second Circuit has stated that "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." <u>Ciaramella</u>, 131 F.3d at 326. As the court explained in <u>Winston</u>, "[w]here . . . the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." 777 F.2d at 83. Because the <u>Winston</u> test necessarily contemplates an oral agreement, however, Courts analyzing this factor also consider "whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing." <u>Hostcentric Techs.</u>, 2005 WL 1377853, at *9.

### 2.  **Application**

#### a)    **Settlement authority**

The Court will separately address whether Lewis had authority as to the Stipulation and the Oral Settlement Agreement.

#### i.    **Authority to execute the Stipulation**

The Stipulation, which Lewis and counsel for the City executed and the District Court so-ordered, dismissed with prejudice Aberra's claims against Sergeant Ingram only. (ECF No. 40). Because a stipulation is an enforceable contract, "[t]he issue before [the Court] is whether the agreement signed by [Lewis] is binding on [Aberra]." <u>Artha Mgmt.</u>, 91 F.3d at 328.

The City argues that Aberra "has not rebutted the presumption that his former attorney had actual authority to settle this matter" when he signed the Stipulation. (ECF No. 66 at 9). In response, Aberra asserts that he did not authorize Lewis to settle, and that he explicitly told Lewis

he did not want to settle any of his claims; however, Aberra does not state when he communicated this intent to Lewis.  (ECF No. 80 at 3).  As proof, Aberra notes that he did not himself sign the Stipulation as to Sergeant Ingram and claims in the December 2019 Status Report that he was not aware of the Stipulation until July 2019.  (ECF No. 46).

Aberra's response does not constitute the affirmative evidence required to rebut the presumption that Lewis, who was his attorney of record at the time the Stipulation was signed and so-ordered by the District Court, had actual authority when he signed the Stipulation.  Jian Wang, 634 F. App'x at 326–27 ("[A]ny party challenging an attorney's authority to settle the case . . . bears the burden of proving by affirmative evidence that the attorney lacked authority."); see Artha Mgmt., 91 F.3d at 330 (explaining that presumption that an attorney-of-record had actual authority to bind a client "requires us to demand from the challenging party clear evidence that the parties intended not to be bound by their attorneys' signatures").  Aberra has not submitted any communication or other evidence — such as a contemporaneous letter or email terminating Lewis as his counsel — that would illustrate he had limited Lewis's authority to enter into the Stipulation, nor did Aberra promptly disavow the Stipulation once he learned of it in July 2019; rather, he waited nearly six months, until the December 2019 Status Report, to make that assertion to the Court.  Accordingly, Aberra has failed to satisfy the burden of showing Lewis lacked authority to execute the Stipulation.

**ii.    Authority to enter the Oral Settlement Agreement**

**a.  Lewis did not have actual authority to enter into the Oral Settlement Agreement[2]**

The Court must determine whether Aberra "had reason to know that, from his words or conduct in his conversation with" Lewis, Lewis "would conclude that he had been given authority to settle[.]"  Valez, 2009 WL 3170098, at *7.  The Court must consider statements and conduct from Aberra's perspective, not Lewis's perspective, because the issue of actual authority turns on what Aberra had reason to know.  Id. at *8; Artha Mgmt., 91 F.3d at 329.

Aberra contends that he never provided Lewis actual authority to settle his claims against the City on the terms set forth in the Oral Settlement Agreement, and that he expressly conveyed his desire not to settle.  (ECF No. 80 at 2–3).  The City argues that Lewis's actual authority to enter the Oral Settlement Agreement is evidenced by:  (1) the August 2018 Demand; (2) the parties' proceeding under the mediation plan; and (3) Aberra's attendance at the mediation session.  (ECF No. 66 at 9).  While these actions evidence that Lewis engaged in settlement negotiations on behalf of Aberra at the time of the mediation, they do not demonstrate that Lewis later had actual authority to settle on the terms in the Oral Settlement Agreement.

---

[2] When authority is a contested issue between the attorney and client, a court may hold an evidentiary hearing.  See Jian Wang, 634 F. App'x at 327 ("'In circumstances where a former attorney and his client dispute the giving of authority, courts generally require the holding of an evidentiary hearing on the question of authorization.'" (quoting Gomez v. City of New York, 805 F.3d 419, 424 (2d Cir. 2015) (per curiam)); Artha Mgmt., 91 F.3d at 330 ("A hearing is not necessary in light of appellants' failure ever to allege that they did not give their attorney authority to sign the settlement agreement for them.").  As of the date of this Report and Recommendation, Lewis is still listed as Aberra's attorney of record on the Court's docket, such that he is presumed to have received all of the filings in this case, including those in which Aberra argues that Lewis lacked actual authority to enter the Oral Settlement Agreement.  Lewis has not represented to the Court that he had that authority, and has not responded in opposition to Aberra's repeated representations that he did not grant Lewis settlement authority.  By affidavit, the City states that its counsel "understood Mr. Lewis to be acting with full authority from his client," but the City does not provide the basis for that understanding or further explain why they believed Lewis to have such authority.  (ECF No. 67 ¶ 14).  Based on Lewis's failure to make any showing to this Court that Aberra granted him settlement authority and his failure to respond to the Court's order directing him to withdraw as attorney of record for Aberra (see ECF No. 45), the Court concludes that it is not necessary to hold an evidentiary hearing regarding settlement authority.

First, the August 2018 Demand does not state or imply that Lewis had actual settlement authority.  (See ECF No. 68-1).  The letter makes a settlement demand of $85,000 and explains why Lewis believed this number was supported by the City's Initial Disclosures.  (Id.)  The letter does not speak to Lewis's authority to engage in settlement discussions on Aberra's behalf in November 2018, over three months later.  (Id.)  Thus, the August 2018 Demand does not demonstrate that Aberra granted Lewis actual settlement authority to settle on the terms in the Oral Settlement Agreement.

Second, the parties' agreement to participate in the mediation plan and the joint submission of proposed timelines for settlement negotiations and mediation does not evidence Lewis's actual authority.  (ECF No. 66 at 9).  Again, Lewis appeared as Aberra's representative for the mediation; this does not show Aberra's conduct toward Lewis that created or implied actual authority to settle on the terms in the Oral Settlement Agreement.  Valez, 2009 WL 3170098, at *7.  The City's contention that Aberra's attendance at the failed mediation session illustrates that Lewis had actual authority later to settle on the terms in the Oral Settlement Agreement, which were starkly different from the initial demand, fails for the same reasons.  The City does not point to any of Aberra's actions toward Lewis that Lewis could have regarded as authorization to settle on the very different terms in the Oral Settlement Agreement.  Manning, 107 F.3d 5, 1997 WL 62973, at *1.  In fact, Aberra's presence at the mediation session implies the opposite — that Aberra's approval was required for Lewis to enter into any settlement agreement.

Finally, the City argues that Aberra has not overcome the presumption that Lewis had actual authority to enter into the Oral Settlement Agreement.  (ECF No. 66 at 8–9).  Unlike the Stipulation, however, there is no enforceable agreement that Lewis "entered into" on behalf of

Aberra for which this burden might apply, because, as explained below, the Court finds that the parties demonstrated a desire not to be bound by the terms of the Oral Settlement Agreement until a signed writing existed.  See infra Section II.A.2.b.

> **b.  Lewis did not have apparent authority to enter into the Oral Settlement Agreement**

To create apparent authority, the principal must make clear to the third party that he "consents to have the act done on his behalf by the person purporting to act for him."  Fennell, 865 F.2d at 502 (internal citations omitted).  A client does not vest apparent settlement authority in his attorney merely by retaining him.  Id. (citing United States v. Beebe, 180 U.S. 343, 352 (1901)).  Apparent authority is created only by affirmative representations of the principal to the third party, and does not arise out of statements the principal fails to make to opposing counsel. See id.

The City argues that "in addition to retaining Mr. Lewis," Aberra "took additional actions which communicated to defense counsel that Mr. Lewis was authorized to settle" on Aberra's behalf.  (ECF No. 66 at 10).  The City argues that apparent authority was created by:  (1) Aberra's silence at the mediation session where counsel exchanged demands; (2) Aberra's failure to contest Lewis's authority to enter into the Oral Settlement Agreement after it was reached; and (3) Aberra's five-month delay before expressing that Lewis did not have authority.  (ECF No. 66 at 11–12).

As a preliminary matter, by "merely retaining an attorney[,] a client does not create apparent authority for the attorney to settle the client's case."  Rahman, 2014 WL 541851, at *8. Thus, the fact that Aberra retained Lewis does not create apparent authority to settle.  The City's additional arguments also do not support a finding that Lewis had apparent settlement authority.

Apparent authority is created by a party's <u>actions</u>, not by what he fails to say or do.  <u>See</u> <u>Fennell</u>, 865 F.2d at 503 (finding that no apparent authority to settle existed when a settlement agreement was reached during a phone conference without either party in attendance and noting that "[t]he generally applicable New York rule is that [a] party who relies on the authority of an attorney to compromise an action in his client's absence deals with such an attorney at his own peril.") (internal citations omitted); <u>Vesterhalt</u>, 667 F. Supp. 2d at 303 ("Apparent authority is created only by affirmative representations of the principal to the third party, and does not arise out of things that the principal fails to say to opposing counsel.").  Aberra credibly asserted, promptly after he learned about the terms of the Oral Settlement Agreement in December 2019, that Lewis never informed him of those terms, and rejected them as a basis on which to settle his claims against the City; Aberra cannot be faulted to failing to object to an Oral Settlement Agreement Lewis failed to tell him about.  Therefore, the Court cannot find apparent authority based on Aberra's failure to proclaim that Lewis did <u>not</u> have settlement authority or his failure to object to the exchange of settlement offers at the mediation.

Here, with respect to terms in the Oral Settlement Agreement, there is no indication that Aberra "made the types of manifestations or representations to Defendants or their counsel which courts in this district have held constitute apparent authority."  <u>Ghilduta v. Trump Corp.</u>, No. 04 Civ. 7494 (BSJ), 2007 WL 9813779, at *3–4 (S.D.N.Y. Nov. 5, 2007) ("[W]here . . . a settlement agreement was reached during a telephone conference without the participation of either party, no apparent authority to settle the case existed").  The City does not allege that Aberra communicated to the City that Lewis had apparent authority to settle on the terms the City claims are part of the Oral Settlement Agreement.  <u>See</u> <u>Vesterhalt</u>, 667 F. Supp. 2d at 303

(finding no apparent authority where plaintiff attended settlement conference with counsel and did not state that attorney was not authorized to settle because "apparent authority is created only by the affirmative representation of the client that such authority exists, and not by the failure to deny the existence of such authority").  Nor does the City provide any proof that Lewis communicated the terms of the Oral Settlement Agreement to Aberra, let alone that Aberra agreed to those terms.

Finally, the Court does not credit the City's argument that Aberra's delay in contesting Lewis's settlement authority indicates apparent authority.  (ECF No. 66 at 12).  In contrast to the Stipulation, which Aberra learned about in July 2019 and did not contest until nearly six months later, Aberra only became aware of the Oral Settlement Agreement and Draft Settlement Agreement in December 2019, after the Court ordered the City to provide him with the settlement papers directly.  (ECF No. 45).  Promptly on receipt of those documents, Aberra objected in the December 2019 Status Report to the City's assertions that he had settled his claim against the City, and informed the Court that Lewis had never provided him with the settlement documents and did not have authority to settle on those terms.  (ECF No. 46).

*       *       *

Accordingly, for the reasons stated above, the Court finds that Lewis did not have actual or apparent authority to enter into the Oral Settlement Agreement.

### b)       Enforceability

#### i.       The Stipulation

A "Stipulation of Dismissal [of] Defendants . . . is an enforceable agreement subject to general principals governing the construction of a contract."  <u>Liberty Synergistics, Inc. v. Microflo,</u>

Ltd., No. 11 Civ. 523 (MKB) (SIL), 2018 WL 5801280, at *3 (E.D.N.Y. Nov. 6, 2018), adopted by

2019 WL 938768 (E.D.N.Y. Feb. 26, 2019); see also Hostcentric Techs., 2005 WL 1377853 at *4;

Musso v. OTR Media Grp., Inc. (In re Ladder 3 Corp.), 571 B.R. 525, 533 (Bankr. E.D.N.Y. 2017),

aff'd 768 F. App'x 146 (2d Cir. 2019) (collecting cases and holding that "[a] stipulation is a

contract, to be enforced under principles of contract law.").

Because Aberra has not rebutted the presumption that Lewis had actual authority to

enter into the Stipulation, see supra Section II.A.2.a.i, the Stipulation, which was executed by

Lewis and counsel for the City and so-ordered by the District Court, is enforceable as a dismissal

of the claims against Sergeant Ingraham with prejudice.  See also infra Section II.B.2.a.

### ii.    The Oral Settlement Agreement

The City argues that the Oral Settlement Agreement contemplated that, in consideration

for a payment of $400, Aberra would voluntarily dismiss with prejudice all claims asserted against

Sergeant Ingram, after which the City's counsel would send to Lewis the settlement paperwork

relating to the claims against the City for execution and filing with the Court.  (ECF No. 66 at 6).

Basing its enforceability argument only on federal common law, the City contends that the Oral

Settlement Agreement is enforceable under Winston because:  (1) both parties demonstrated

their intent to be bound; (2) both parties partially performed under the terms of the Oral

Settlement Agreement; (3) the Oral Settlement Agreement encompassed all material terms; and

(4) the lack of writing does not preclude a finding of an enforceable contract.  (Id. at 15).  Aberra

responds that there was no partial performance of the Oral Settlement Agreement, that the

parties had not agreed to all material terms, and that he did not sign the Draft Settlement

Agreement or the Stipulation.  (ECF No. 80 at 6–7).  As noted above, the Court will consider enforceability under both New York and federal common law.

### a.  Rule 2104

The Court finds that the Oral Settlement Agreement is not binding under Rule 2104, because it was not "made between counsel in open court[.]"  N.Y. C.P.L.R. § 2104.

The City does not attempt to argue that the Oral Settlement Agreement was made in open court, was executed by either party, or entered on the docket, nor could it make such an argument.  There simply is no contemporaneous documentation or corroboration of the terms discussed between Lewis and the City.  Therefore, the Oral Settlement Agreement was not reached in "open court" as contemplated by Rule 2104.  See Meltzer, 2017 WL 5032991, at *5 (New York law "requires that a settlement agreement be set forth in writing or entered into the record by counsel in open court.");  Stewart v. City of New York, No. 15 Civ. 7652 (AT) (JCF), 2017 WL 4769396, at *4 (S.D.N.Y. Oct. 20, 2017) ("'The significance of announcing the terms of an agreement on the record in open court is to ensure that there are at least "some formal entries . . . to memorialize the critical litigation events," and to perform a "cautionary function" whereby the parties' acceptance is considered and deliberate.'") (quoting Powell, 497 F.3d at 131)).

Even in the absence of a court record, the Oral Settlement Agreement does not otherwise "substantially comply" with Rule 2104.  As explained in Alvarez,

> Courts have found substantial compliance with § 2104 where (1) the court entered notice of the settlement in its calendar and computer records; (2) the settlement was reached on the record at a deposition or settlement conference; or (3) the settlement was reached at or following a settlement conference before the court.

Alvarez, 146 F. Supp. 2d at 338 (internal citations omitted) (finding agreement enforceable when agreement was contained in mediator's proposal); see also Pullman, 2014 WL 5043319, at *14

(finding substantial compliance with Rule 2104 where settlement was reached in open court and on the record); <u>Willgerodt ex rel. Majority Peoples' Fund for the 21st Century, Inc. v. Hohri</u>, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (finding substantial compliance with Rule 2104 where settlement was reached on the record before a magistrate judge and evidenced by transcript) <u>aff'd</u> 159 F.3d 1347, 1998 WL 537834 (2d Cir. July 21, 1998) (summary order).  These examples, none of which exist here, illustrate that "substantial compliance" requires contemporaneous written documentation that an agreement was reached.   Accordingly, because the Oral Settlement Agreement does not comply with Rule 2104, it is unenforceable.

### b.  Federal common law

Although non-compliance with Rule 2104 alone renders the Oral Settlement Agreement unenforceable, the Court will also consider evaluate the Oral Settlement Agreement under the <u>Winston</u> factors.

As stated above, in considering whether an oral agreement is enforceable, courts applying <u>Winston</u> must consider whether:

> ([1]) there has been an express reservation of the right not to be bound in the absence of a writing; ([2]) there has been partial performance of the contract; ([3]) all of the terms of the alleged contract have been agreed upon; [and] ([4]) the agreement at issue is the type of contract that is usually committed to writing.

<u>Meltzer</u>, 2017 WL 5032991, at *4.  The Court considers each factor in turn.

### 1.  **Expressed intent**

The City argues that, despite the lack of a signed writing, the October 2018 Letter and the November 2018 Letter evidence the parties' intent to be bound by the Oral Settlement Agreement.  (ECF No. 66 at 14–15).

In pertinent part, the October 2018 Letter states that, although the mediation did not result in an agreement, Lewis

> subsequently spoke with Mr. Shah of the city's corporation counsel's office who had been assigned to the case.  This discussion resulted in a settlement with the City of New York.  Accordingly, [Sergeant Ingram] is no longer a Defendant in this case and a future status conference will not be needed.

(ECF No. 36).

The City argues that the October 2018 Letter demonstrates that the Oral Settlement Agreement settled Aberra's claims against <u>both</u> the City and Sergeant Ingram, and that the statement "[Sergeant Ingram] is no longer a Defendant in this case" illustrates that the parties intended to be bound by the Oral Settlement Agreement before it was reduced to writing.  (ECF No. 66 at 13–14).

The Court disagrees with the City's strained interpretation of the October 2018 Letter. Where, as here, the City is both a defendant and acts on behalf of an individual defendant (Sergeant Ingram), the term "City" is ambiguous.  Although Lewis stated that he reached an agreement with the "City of New York," the letter goes on only to address the claims against Sergeant Ingram; there is no mention of a forthcoming settlement of Aberra's claims against the City as well.  (ECF No. 36).  Lewis's statement could mean that Lewis reached an agreement with the City <u>as to Sergeant Ingram</u>, an interpretation supported not only by the Stipulation, but also by the facts that:  (1) the letter does not state that the City will no longer be a defendant in the

case, (2) does not mention dismissal of the case in its entirety, and (3) does not mention any other terms the City claims are part of the Oral Settlement Agreement.  (ECF No. 36).

Further, the Court does not read the statement that Sergeant Ingram "is no longer a Defendant in this case" to be a clear indication that the parties intended to be bound by the Oral Settlement Agreement.  That statement evidences that Lewis and the City discussed dismissing Sergeant Ingram, but there is no evidence in the letter that would suggest that the parties reached or even discussed a comprehensive agreement covering Aberra's claims against the City.

The City also claims that the November 2018 Letter indicates the parties' intent to be bound absent a formal writing.  (ECF No. 66 at 15).  The November 2018 Letter stated that the parties had reached a settlement agreement, and "[a]s part of the agreement, plaintiff agreed to first voluntarily dismiss all claims against [Sergeant Ingram] . . . with prejudice."  (Id.)  The letter continues, "[u]pon endorsement [of the Stipulation] by the Court, the parties will subsequently file a Stipulation of Dismissal with respect to defendant City."  (Id.)  The statement that Aberra would first dismiss the claims against Sergeant Ingram illustrates the City's understanding that the Stipulation was part of an overarching settlement agreement that contemplated the Stipulation as a first step.  However, the November 2018 Letter was not a joint letter, and the same position is not reflected in the October 2018 Letter.

In addition, there are several indications in the Draft Settlement Agreement that the parties did not intend to be bound by the Oral Settlement Agreement.  First, the Draft Settlement Agreement contains a merger clause, which reads:

> This Stipulation of Settlement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation of Settlement regarding the subject matter of the instant proceeding shall be

deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

ECF No. 68-3 at 5 (emphasis added).  The presence of this clause is "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement."  Ciaramella, 131 F.3d at 324 (finding parties did not intend to be bound by oral agreement where the draft agreement included a merger clause reading "[This] Settlement Agreement and General Release constitutes the complete understanding between the parties, may not be changed orally and supersedes any and all prior agreements between the parties . . . .   No other promises or agreements shall be binding unless in writing and signed by the parties."); Delgrosso, 2013 WL 5202581, at *7 ("The existence of a merger clause . . . has been deemed by the Second Circuit to be persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.") (internal citations omitted); accord Kaczmarcysk v. Dutton, 414 F. App'x 354, 355–56 (2d Cir. 2011) (summary order).

In addition, after the introductory clauses, the Draft Settlement Agreement reads, "NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned . . . ."  (ECF No. 68-3 at 1) (emphasis added).   Courts have found that this language, notably the use of "hereby," indicates that the parties only intended to be bound by the terms of the written agreement that follows, and not by previously discussed oral provisions.  Ciaramella, 131 F.3d at 324 (finding the clause "NOW, THEREFORE, with the intent to be legally bound hereby . . . [the parties] agree to the terms and conditions" to indicate the parties' intentions only to be bound by the written agreement); Meltzer, 2017 WL 5032991, at *5 (finding that the clause "It is hereby stipulated and agreed that the above-captioned action is settled in accordance with the following" "demonstrates that only the terms of the settlement agreement, and not any

preexisting pact, would legally bind the parties.") (internal citations omitted); Stewart, 2017 WL 4769396, at *2 (holding that the inclusion of the clause "NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows" demonstrated the parties' intent not to be bound by any agreement entered prior to the drafted settlement agreement).

Finally, the inclusion of the language "IN WITNESS WHEREOF, I have executed this Release this ___ day of ___, [year]" above the signature line on a general release has also been held to indicate that the "release would be effective only upon a signature." Stewart, 2017 WL 4769396, at *2. Identical language appears in the release the City prepared but Aberra never signed, which is additional evidence that the parties contemplated that the general release as to the City would not be effective unless and until Aberra signed. (ECF No. 68-3 at 6) ("IN WITNESS WHEREOF, I have executed this Release this __ day of ____, 2018")).

Accordingly, because the record demonstrates that the parties did not intend to be bound until there was a signed writing, the first Winston factor weighs against enforcement of the Oral Settlement Agreement.

## 2.  **Partial performance**

The City argues that both parties partially performed the terms of the Oral Settlement Agreement.  (ECF No. 66 at 14).  The City contends that the Oral Settlement Agreement contemplated dismissing Sergeant Ingram as a precondition to dismissing the claims against the City, rather than considering each dismissal a separate agreement.  (ECF No. 66 at 14).  The City claims that it partially performed by preparing and sending the Stipulation to Lewis, by executing and filing the Stipulation on the docket, by preparing and sending the stipulation of dismissal of

claims against the City, and by preparing and sending the Draft Settlement Agreement and general release to Lewis.  (Id. at 14–15).  The City argues that Aberra partially performed when Lewis filed the October 2018 Letter and executed and returned the Stipulation.  (Id. at 15).

The first problem with the City's argument is that the Draft Settlement Agreement does not mention Sergeant Ingram, and stands alone as a separate agreement.  (ECF No. 68-3).  Viewed separately from the Stipulation, neither party performed any of the contemplated terms in the Oral Settlement Agreement:  neither executed the Draft Settlement Agreement, the City did not pay Aberra the $400 settlement sum, and Aberra did not execute the general release or sign any other document.  (See id.)

The second problem with the City's argument is that the mere drafting of settlement papers is not partial performance.  See Can't Stop, 2019 WL 5773739, at *7 ("[O]ne party's drafting of a written agreement does not constitute partial performance where the parties did not agree that one of them was responsible for drafting such document."); Stewart, 2017 WL 4769396, at *3 (rejecting the argument "that drafting paperwork constitutes partial performance of a bargained-for contract, especially where . . . drafting the settlement agreement was not a term of the oral agreement."); Johnson v. Fordham Univ., No. 11 Civ. 4670 (ALC), 2016 WL 450424, at *4 (S.D.N.Y. Feb. 4, 2016) ("Because the parties did not agree on all material terms and there was no provision of the oral agreement by which one party was obligated to draft an agreement . . . the drafting of the settlement agreement did not constitute partial performance.").  The City's reliance on Wesley v. Correction Officer Badge No. 9417 to suggest that courts have found partial performance by the drafting of papers is misplaced because, in that case, the settlement agreement was reached during a conference with the Court, and there

was no question of settlement authority, neither of which is the case here.  See 2008 WL 41129, at *3.

At a minimum, the record is unclear whether the Stipulation was a separate agreement or a term of the Oral Settlement Agreement, and therefore this factor is, at best, neutral as to the enforceability of the Oral Settlement Agreement.

### 3. **Agreement to all terms**

The City argues that the Oral Settlement Agreement encompassed all material terms, namely "the requirement of a general release, the prior dismissal of the claim against the individual defendant, and the payment of four hundred ($400) dollars."  (ECF No. 66 at 15). Aberra insists that he did not agree to this $400 sum and that he did not authorize Lewis to settle his claims for this amount.  (ECF No. 80 at 2–3).

"A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement."  Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).  The City has not stated that it communicated these material terms to Aberra, nor has it submitted any evidence to show that Aberra knew of and accepted these terms.

In instances where courts have found agreement on all material terms of an oral settlement, the agreement was made on the record before a judge, Powell, 497 F.3d at 131; Goldstein, 2017 WL 1078739, at *8; Pullman, 2014 WL 5043319, at *3–4, the final terms were recorded in emails, Meltzer, 2017 WL 5032991, at *7; Hostcentric Techs., 2005 WL 1377853, at *5, or the material terms were outlined in a mediator's proposal, Alvarez, 146 F. Supp. 2d at 336. None of these scenarios exist here.  The only evidence before the Court as to the material terms

of the Oral Settlement Agreement is contained in the Draft Settlement Agreement, which the City prepared, to which Lewis did not respond, and which Aberra credibly claims he never received.

In Winston, the Second Circuit explained that the existence of even "minor" or "technical" points of disagreement in draft settlement documents may be sufficient to preclude a finding that parties had reached a final agreement on all terms.  Winston, 777 F.2d at 82–83.  Given that the settlement amount was only $400 — essentially, the court filing fee — the Court is reluctant to infer that the parties had agreed on all material terms, particularly given that the FAC demanded two million dollars in damages (ECF No. 23), and the first settlement demand before the mediation was $85,000.  (ECF No. 68-1 at 2).  The settlement memorandum Aberra attached to his response also indicates that he and Lewis contemplated settling his claims for $50,000 to $85,000.  (ECF No. 80 at 24).  The great disparity between the number the City asserts had been agreed — $400 is less than 1/200th of Aberra's opening demand before the mediation — mitigates against a finding that Aberra himself ever agreed to settle for such a small sum.  In addition, none of the documents supposedly evidencing the Oral Settlement Agreement, apart from the Draft Settlement Agreement, indicate an agreed settlement amount.  Accordingly, the record does not support a finding that Aberra agreed to a settlement amount of $400.

For the reasons above, the Court finds that the third factor weighs against enforcing the Oral Settlement Agreement.

### 4.  Agreement usually in writing

In cases involving claims against the City, "settlement agreements with the Corporation Counsel of the City of New York are . . . always reduced to writing."  Alli v. Warden, No. 12 Civ.

3947 (GBD) (GWG), 2016 WL 7176979, at *2 (S.D.N.Y. Dec. 9, 2016), adopted by 2017 WL 118023

(S.D.N.Y. Jan. 11, 2017).  While the alleged material terms of the Oral Settlement Agreement are

not complex, Hostcentric Techs., 2005 WL 1377853, at *9, because the Draft Settlement

Agreement was never executed and there is no corroboration of the material terms of the Oral

Settlement Agreement, the Court finds that this factor also weighs against enforcing the Oral

Settlement Agreement.  See Ciaramella, 131 F.3d at 326 ("Settlements of any claim are generally

required to be in writing or, at a minimum, made on the record in open court.").

*     *     *

Because the Oral Settlement Agreement does not comply with Rule 2104, and because

three of the four Winston factors demonstrate that the parties did not intend to be bound until

a formal settlement agreement was fully executed, I respectfully recommend that the District

Court decline to enforce the Oral Settlement Agreement and allow Aberra's claims to proceed.

### B.    Motion to Amend

The Court has construed Aberra's SAC as a motion for leave to amend his complaint to:

(1) restore Sergeant Ingram as a defendant; (2) add three new John Doe defendants (the other

police officers present at the 2016 Arrest); (3) add allegations of damages and remedies; and (4)

amend the monetary demand for each cause of action.  (ECF No. 49).

The City argues that the Motion to Amend should be denied because:  (1) the Oral

Settlement Agreement is enforceable; (2) Aberra's claims against Sergeant Ingram are precluded

by res judicata because they were dismissed with prejudice by the Stipulation; and (3) the claims

against the additional defendants are barred by the statute of limitations and would not relate

31

back.[3]  (ECF No. 69 at 6).  Aberra argues that he did not provide Lewis authority to settle his claims against Sergeant Ingram and that justice supports granting him leave to amend.  (ECF No. 80 at 2–3).

1. **Applicable law**

   a) **Rule 15**

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities."  Monahan v. NYC Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (internal citaitons omitted) ("Rule [15] reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits.") (internal citations omitted).

The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."  Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000).  This District has held that a Court should deny a motion to amend where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party."  Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649

---

[3] Based on the Court's recommendation that the Motion to Enforce be denied, supra Section II.A.2.b.ii, the Court will not address the City's argument that the Motion to Amend should be denied based on the Oral Settlement Agreement.  The City also argues that Aberra fails to state a claim against the City under Rule 12(b)(6) and that Aberra's state law claims are barred by the statute of limitations.  (ECF No. 69 at 6, 16).  Because, as explained below, the Court recommends that Aberra be denied leave to add claims against Sergeant Ingram and the John Doe Defendants on other grounds, it is not necessary to address the City's alternative arguments for dismissal.

(VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent that finds proper grounds for denying a motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment")) (citing Foman v. Davis, 371 U.S. 178, 182 (1962).

### 2. Application

The Court considers each of Aberra's proposed amendments to the FAC in turn.

### a) Restoration of Sergeant Ingram as a defendant

The City argues that Aberra cannot reinstate Sergeant Ingram as a defendant because the Stipulation dismissed his claim against her with prejudice and it is thus now barred by res judicata. (ECF No. 69 at 12).  Res judicata applies where:  "(i) an earlier action resulted in an adjudication on the merits; (ii) that earlier action involved the same counterparty or those in privity with them; and (iii) the claim sought to be precluded was raised, or could have been raised, in that earlier action."  Fabian v. Pappalardo, 395 F. Supp. 3d 257, 263 (S.D.N.Y. 2019) (internal citations omitted).

The Stipulation, which is enforceable for the reasons set forth above, see supra Section II.A.2.b.i, provided that "any and all claims that were asserted or could have been asserted on behalf of plaintiff Natanya Aberra against defendant [Sergeant] Diana [Ingram] arising out of the events alleged in the complaint in this matter, are dismissed with prejudice."  (ECF No. 38).  This Stipulation, which was with prejudice, "has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action."

Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986) ("As written, the stipulation stated in relevant part that 'this action is dismissed with prejudice and without costs against either party.'"); see also Samuels v. N. Telecom, Inc., 942 F.2d 834, 836 (2d Cir. 1991).

Thus, for purposes of res judicata, the Stipulation is a final adjudication on the merits as to Aberra's claims against Sergeant Ingram related to the 2016 Arrest.  Nemaizer, 793 F.2d at 60. Accordingly, I respectfully recommend that the Stipulation be enforced and Aberra be denied leave to reassert claims against Sergeant Ingram.

### b)    Addition of John Doe officers as defendants

In the proposed SAC, Aberra seeks to add as "John Doe" defendants the other officers who were involved in his arrest.  (ECF No. 48 at 1).  The City argues that Aberra's request to add John Doe defendants is barred by the statute of limitations applicable to claims of false arrest and that naming these defendants would not "relate back" to the date of the original pleading. (ECF No. 69 at 13).

The City argues that the Court should not allow this amendment because "[a]n amendment to a complaint 'is futile if the plaintiff seeks to add defendants under claims that would be time-barred.'"  (ECF No. 69 at 13 (citing Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000))).  For 42 U.S.C. § 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'"  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (quoting Owens v. Okure, 488 U.S. 235, 249–50 (1989)).  New York's three-year statute of limitations for unspecified personal injury actions applies to Aberra's claim of false arrest.  Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).

In a false arrest case, the "detention without legal process" is the injury that triggers the statute of limitations, and the limitations period therefore begins to run when the alleged false arrest ends. Wallace v. Kato, 549 U.S. 384, 388–89 (2007). In cases where a plaintiff appears for arraignment, the alleged false arrest ends, and the cause of action accrues, at the moment of that arraignment. Id.; see also Swinton v. City of New York, 785 F. Supp. 2d 3, 12 (E.D.N.Y. 2011) (finding that the limitations period for false arrest begins when plaintiff "is bound over by a magistrate or arraigned on charges.") (internal citations omitted). Aberra was arraigned on March 10, 2016, (ECF No. 23 ¶ 18), and thus his claim for false arrest accrued on that day, such that the three-year statute of limitations for that claim expired on March 10, 2019. Swinton, 785 F. Supp. 2d at 12. The City argues that Aberra's claims against these proposed defendants, which he did not assert until the proposed SAC filed on December 16, 2019, are therefore untimely. (ECF No. 69 at 14).

An untimely claim may "relate[] back" to the date of the original pleading if there was a "mistake" as to the identity of the proper party to name. Fed. R. Civ. P. 15(c); Liverpool v. Davis, No. 17 Civ. 3875 (KPF), 2020 WL 917294, at *7 (S.D.N.Y. Feb. 26, 2020) ("Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties . . . [;] the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.") (internal citation omitted).

For an amendment including a new party to relate back to the original pleading, the party to be added must, within 90 days of the filing of the initial complaint, have "received such notice of the action that it will not be prejudiced in defending on the merits; and knew or should have known that the action would have been brought against it, but for a mistake concerning the

proper party's identity."  Fed. R. Civ. P. 4(m), 15(c)(1)(C)(i)–(iii).  The Second Circuit has held that an amendment cannot relate back for "'failure to identify individual defendants when the plaintiff knows that such defendants must be named' because such failure 'cannot be characterized as a mistake.'"  Dominguez v. City of New York, No. 10 Civ. 2620 (BMC), 2010 WL 3419677, at *2 (E.D.N.Y. Aug. 27, 2010) (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995), modified, 74 F.3d 1366 (2d Cir. 1996) (per curiam)).

Here, Aberra did not provide notice to the John Doe officers within 90 days of filing the initial complaint.  The complaint was filed on February 8, 2018 and 90 days thereafter was May 9, 2018, but Aberra did not seek to add these defendants until December 16, 2019.  Aberra's current pro se status does not relieve him of this notice requirement.  Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam) ("[E]ven when a suit is brought by a pro se litigant, 'an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'") (quoting Barrow, 66 F.3d at 470).

Finally, the failure to name the additional defendants cannot be characterized as a mistake.  The City provided Lewis the names of all officers present at the 2016 Arrest, and in the August 2018 Demand to the City, Lewis stated:  "I will not be filing a second[] Amended Verified complaint based on the disclosure you provided to me."  (ECF No. 68-1 at 1).

Accordingly, I respectfully recommend that the District Court deny Aberra leave to amend to add the three John Doe Officers as defendants.

### c)   Damages and requested remedies

Aberra's Motion to Amend seeks to add details regarding the damages he sustained as a result of his arrest, seeks the remedy of an "expungement of all records," and asserts damages of $2 million – $2.5 million for each cause of action.  (ECF No. 48).  Aberra does not appear to seek to add a new claim, but only additional damages and remedies based on the continued effects of the 2016 Arrest.

The City does not oppose these proposed amendments, provided that they are not an independent cause of action.  (ECF No. 69 at 10 n.6) ("To the extent that the SAC pleads plaintiff's alleged damages but withdraws the attempt to raise them as an independent cause of action, defendant does not oppose that proposal.").

In the absence of the City's objection to these amendments, I respectfully recommend that Aberra be allowed to amend the FAC to include additional allegations regarding his damages and remedies.  Morris Builders, L.P. v. Fid. Nat'l Title Ins. Co., No. 16 Civ. 9114 (VB), 2017 WL 5032996, at *4 (S.D.N.Y. Nov. 2, 2017) ("Here, because the proposed amended complaint does not seek to add a new claim at all, only additional damages, at this stage the Court will permit plaintiff to amend the complaint to add the damages it claims it incurred . . . .  Defendants may, however, challenge plaintiff's damages on a motion for summary judgment or at trial.").

\*       \*       \*

For the above reasons, I respectfully recommend that Aberra be allowed to amend the FAC only as to add his allegations regarding his damages and requested remedies.

### III.   <u>CONCLUSION</u>

For all of the foregoing reasons, I recommend that the Motion to Enforce be DENIED and the Motion to Amend be GRANTED in part, insofar as Aberra be permitted to file a Second Amended Complaint supplementing his allegations as to damages and remedies, and DENIED in part insofar as Aberra be denied leave to (1) reassert any claims against Sergeant Ingram and (2) add the John Doe Defendants.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Plaintiff at the below address.

Dated:     New York, New York
           July 31, 2020

                                        SO ORDERED

                                        _____
                                        SARAH L. CAVE
                                        United States Magistrate Judge

<u>Mail to</u>:     Natanya Aberra
                2075 Third Ave., Apt. 6-C
                New York, NY 10029

*               *               *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Mr. Aberra does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Defendant's counsel.  See Local Civ. R. 7.2.