UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
………………………………………………….X

NATANYA ABERRA
Plaintiff

v-

CITY OF NEW YORK
Defendant

AMENDED SECOND COMPLAINT
CIVIL ACTION 18-CV-1138

………………………………………………….X

THE PLAINTIFF NATANYA ABERRA AS AND FOR HIS CAUSE OF ACTION FOR FALSE ARREST AND FALSE IMPRISONMENT AGAINT THE CITY OF NEW YORK ALLEGES AS FOLLOWS:

1) That the venue exists in this Honorable Court in that this Judicial District in which the events that gave rise to this cause of action.
2) That at all times mentioned herein the City of New York was a duly authorized Municipal Corporation under and pursuant to the laws of the State of New York.
3) That at all times mentioned herein the City of New York employed its own law enforcement professionals known as the New York City Police Department (N.Y.P.D.)
4) That this Honorable Court has jurisdiction of this Cause of Action pursuant to Title 28, Sections 1331 and 1343 of the United States Code.
5) That within ninety days of the date in which this cause was of action arose corporation council for the City of New York was served with a notice of claim setting forth the name and address of the claimant, the nature of the claim, the time and manner it took place and the damages and injuries.
6) That thereafter, the corporation council was served with and amended notice of claim setting forth additional damages and injuries that had not been known when the initial notice of the claim was served on the cooperation council for the City of New York.
7) That the City of New York retained the law firm of Cavetti, Weinberg and Nicholson to conduct a lengthy and invasive 50-H comptrollers hearing concerning all the information contained in the initial and or amended notice of claims served on the corporation all the council for the City of New York.

DESCRIPITON OF ARREST

8) That for nearly seven years prior to this date of the cause of action the Plaintiff had served under Captain Thomas O'Brien, M.D. with distinction and honor for seven years.
9) That in addition to being the Plaintiff's treating physician prior to the date this cause of action arose Captain Thomas O'Brian, M.D. was the Commanding Officer in Charge (C.O.I.C.) of the 102nd Forward Medical Support Detachment (F.M.S.D.) and as such had the responsibility to maintain the health and wellbeing of his troops which the Plaintiff was and continues to be.
10) That on March 09, 2016 at approximately 12:30 PM the Plaintiff was lawfully on the ninth floor of the Grant Associates employment agency located at 55 West 125th Street New York, N.Y.
11) That soon after the Plaintiff entered into the establishment of Grant Associates, he was repeatedly harassed by their employees without provocation whatsoever on his part and accused of falsehoods of a sexual nature.
12) That due to the continued harassment and falsehoods directed at the Plaintiff by employees of Grant Associates, the Plaintiff made a call to the 911 call center to ask for police assistance to come to the ninth floor of 55 West 125th Street where Grant Associates are located to mitigate the harassment and stop the employees from harassing him and accusing him of falsehoods. During that call 911 call he told the dispatcher that he had accidentally came in contact with her flowing her erupt stop while walking down a crowded hallway with a woman who was also on the ninth floor and in the Grant Associates establishment. However, he has apologized to her immediately thereafter.
13) That the City chose to not to speak to the Plaintiff and ignored the Plaintiff entirely due to the interception of the staff members which the responding police officers permitted to dissuade them.
14) That the City refused to take into account or consideration and acknowledge the Plaintiff's registered complaint with the 911 Call Center.
15) That the employees located at 55 125 street employed video surveillance and made it accessible to the City that was filming these events on the ninth floor during the time period the Plaintiff was on the floor. The City actually viewed the entire video film which clearly showed that the Plaintiff was actually not behind the women and the City should have observed.
16) That in spite of viewing the recorded surveillance footage and the 911 call, the City actively solicited the women into making a false "complaint" to which she merely complied with to establish a false allegation and probable cause that the surveillance footage does not corroborate.

17) That a thorough competent and complete professional assessment or investigation of the matter would only have warranted at the very least an inquiry by the City however the City maliciously chose not to and instead falsely arrested the Plaintiff and then carted the Plaintiff off in handcuffs and then falsely imprisoned the Plaintiff in the local precinct for eight hours where he was finger printed, where mug shots were taken and thereafter taken to the "Tombs" where he was arraigned about eighteen hours later in direct violation of his protections, privileges and civil rights that were guaranteed to the Plaintiff under the Constitution of the United States of America and thereby obliterating the Plaintiff of the presumption of all innocence.
18) That in spite of the video recording and the Plaintiff's 911 call to the Dispatch Call Center the Plaintiff was charged with "Sexual Abuse in the Third Degree" in violation of New York Penal Law Sec. 240.26(2) (ECF No. 32 at 3-4) which the surveillance footage clearly did not show.
19) That the Plaintiff pleaded "not guilty" at his arraignment and fervently denied any sexual contact with the women on the ninth floor and was released in his own recognizance. He was thereafter required to make additional stressful appearances in Court on September 13, 2016, November 03, 2016, and lastly December 20, 2016, before Justice Pandit-Durant who reviewed all three-video surveillance footage (the NYPD had viewed earlier) and promptly dismissed the charge with prejudice based solely on the video surveillance footage.
20) That in spite of the dismissal of the case and even with cases such as where sexual assault allegations have surfaced the Plaintiff is still considered "guilty" in the Court of Public Opinion.
21) That the City was flagrantly negligent in failing and or ignoring what the Plaintiff who had tried to offer his registered complaints recorded on the 911 call and generally and more specifically in the discounting of his attempts to be heard overlooked what was obvious to be seen on the video surveillance footage which would had nullified any "probable cause" and or the basis for the Plaintiff's subsequent arrest thereby providing a meritorious claim for false arrest and imprisonment.
22) That the City of New York was negligent and carless in failing to advise NYPD the concerns of the Plaintiff and what was iterated on the 911 call recording.
23) That putting aside the Plaintiff's 911 call. The video surveillance footage viewed by the City on the scene (prior to the Plaintiff being arrested) clearly showed that the Plaintiff had not committed a sexual assault and should have thereby nullified any notions of "probable cause" that lead to a wrongful arrest.
24) That the City was careless and negligent in not instructing that when the unbiased video clearly showed no sexual assault was committed and that an arrest ought not to have been made.
25) That the City's wrongful arrest of the Plaintiff was negligent in the not knowing when an arrest is justified based on solid evidence, competent assessment and complete investigation of the 911 call placed by the Plaintiff rather than unreliable and biased third-party testimonies.

26) That the City was negligent in failing to educated and instruct their police officers on how to make a complete and competent police assessment and investigation of a potential crime BEFORE they make an arrest such as the one involving the Plaintiff.
27) The City falsely arrested and imprisoned the Plaintiff as evidenced. The presiding Justice Pandit- Durant of the criminal court found that based on the 911 call and the video surveillance footage there was nothing to base any charge on and promptly dismissed the case <u>with</u> prejudice and without holding a formal hearing or eliciting any testimony from the arresting NYPD officers.
28) That once the City had viewed the evidences namely the video surveillance footage the City had then become aware of the nature of the situation and had the full discretion as to whether or not to affect an arrest the Plaintiff but, nevertheless the City made a willfully malicious and conscious decision the arrest the Plaintiff thereby abusing that discretion and the trust that had come with it.
29) That the City engaged in entanglement tactics to delay and forestall justice for example by insisting on video surveillance discs that the City itself had already seen and even presented in Court.

ALLEGATIONS OF DAMAGES

30) That the Plaintiff was a 57 years of age married serviceman who had been awarded two Good Conduct Medals, with a family at the time of his wrongful arrest and false imprisonment and prior to that had <u>never</u> been arrested, handcuffed, finger printed, had mug shots taken, locked in a jail cell, shackled and or to other people and herded into a poorly ventilated paddy wagon to the "Tombs" or arraigned prior to the Plaintiff's wrongful arrest and false imprisonment was consequently severely depressed, thoroughly humiliated, disgraced, shamed, embarrassed, violated, dishonored, debased and emotionally spent while the Plaintiff's case was pending and these emotions remain to this date even after the dismissal of the Plaintiff's wrongful and sexual assault charge.

31) That prior to his arrest the Plaintiff had a preexisting condition of asthma that was becoming more prominent. According to the Plaintiff's treating physician Captain Thomas O'Brian, M.D. he was asymptomatic at the time of his arrest, notwithstanding, the psychological impact of his wrongful arrest caused increased experiences of asthmatic episodes, aggravated his marriage and family relationships and transformed a previously asymptomatic condition to one that was highly symptomatic prompting the Plaintiff to check into St. Luke's Emergency Room for exacerbation of asthma prior to his the Plaintiff's case being dismissed on 09/04/2016. Even after the dismissal of the case the Plaintiff's asthmatic condition increased has was admitted to Mount Sinai Hospital and subsequent emergency room visits to the Lennox Hill Hospital thereof based on the professional assessment of Caption Thomas O'Brian. M.D.

32) That prior to the wrongful arrest of and imprisonment the Plaintiff had not experienced any emotional or psychiatric problems or issues. Notwithstanding, after the Plaintiff's wrongful arrest and imprisonment the Plaintiff has presented with symptoms of agitation, nervous/anxious, change in appetite, depressed mood, flashbacks, sleep disturbances, feelings of helplessness, loss of energy, difficulty with concentration and suicidal thoughts. The initial diagnosis was "adjustment disorder with mixed anxiety and depressed mood (HCC) F32.1 and, post-traumatic stress disorder (P.T.S.D.) F43.10" Notwithstanding, the Plaintiff's updated diagnosis is "major depression with suicidal ideation" as per the Family Health Center of Harlem. Emotional stress and trauma to the Plaintiff began with the wrongful arrest that occurred and was perpetrated by the City of New York.

33) That due to his wrongful arrest the Plaintiff had been advised that even with his MPA in Emergency and Disaster Management and his practical engagement skills training and Certification in Emergency and Crisis Management from the Israeli Military Industries Academy (I.M.I.A.) from the State of Israel, Bene Barch the Plaintiff has been advised that he will <u>not</u> be able to obtain gainful employment in his chosen field due to his wrongful arrest.

34) That due to the nature of the allegations that were levied against the Plaintiff as a prior Foster parent he will never be able to engage ever again in foster parenting activities or pursue the possibility adoption a child

WHEREFORE THE PLAINTIFF NATANYA ABERRA DEMANDS EXPUNGEMENT OF ALL RECORDS AND A JUDGMENT IN THE SUM OF TWO MILLION DOLLORS TO TWO POINT FIVE MILLION AND AS TO EACH CAUSE OF ACTION CONTAINED IN THIS AMENDED VERIFIED COMPLAINT.

DATED:
September 24, 2020

*Natanya Aberra*
Natanya Aberra
Plaintiff
2075 3rd Avenue
New York, N.Y. 10029
646.345.1745

New York City Law Department
Mr. Evan Gottsein (Law)