UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATANYA ABERRA,<br><br>                              Plaintiff,<br><br>        -v-<br><br>THE CITY OF NEW YORK,<br><br>                              Defendant. | CIVIL ACTION NO.: 18 Civ. 1138 (LAK) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LEWIS A. KAPLAN**, United States District Judge:

## I. INTRODUCTION

Plaintiff Natanya Aberra, proceeding pro se, asserts against Defendant the City of New York (the "City") a municipal liability claim under 42 U.S.C. § 1983 arising out of Aberra's arrest on March 9, 2016.  Before the Court is the City's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Aberra's Second Amended Complaint ("SAC"), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 98 (the "Motion")).  For the reasons set forth below, I respectfully recommend that the Motion, construed as a motion for summary judgment, be GRANTED.

## II. BACKGROUND

### A.  Factual Background

The following material facts are undisputed, except where indicated.[1]

---

[1] The record the Court has considered in preparing this factual summary consists of: (i) the SAC (ECF No. 88); (ii) video footage the City submitted with a pre-motion letter (ECF No. 90-1); (iii) the Declaration

On the afternoon of March 9, 2016, Aberra was inside the offices of Grant Associates, a job placement program located on the ninth floor of 55 West 125th Street, New York, New York. (ECF Nos. 88 ¶ 10; 100 ¶ 7; 105 at 4 ¶ 6).  Aberra was at Grant Associates to take a class in credit repair.  (ECF No. 99-7 at 15).[2]

The record on the Motion includes video footage of the following events.  (ECF No. 90-1).[3]  As Aberra, wearing a large backpack, spoke to a person at the front desk, a woman ("H.M.")[4] approached his right toward a hallway leading to classrooms.  (ECF Nos. 90-1 (Video 1) at 1:25:14; 100 ¶ 8; 105 at 4 ¶¶ 7–8).  Aberra turned to his right and walked behind H.M. toward the hallway. (ECF Nos. 90-1 (Video 1) at 1:25:15–1:25:21; 100 ¶ 9; 105 at 4 ¶ 8).  As Aberra and H.M. reached the entrance to the hallway, she was just ahead and to the left of him.  (ECF No. 90-1 (Video 2) at 1:25:19).  Just then, H.M. stopped and Aberra "accidentally came in contact with" H.M. for an instant as she turned and looked him as he lifted his arms out to the side and moved around her to the right and down the hallway.  (ECF Nos. 88 ¶ 12; 90-1 (Video 1) at 1:25:20–1:25:25; 90-1

---

of Evan J. Gottstein in support of the Motion and attached exhibits (ECF Nos. 99–99-12 ("Gottstein Declaration")); (iv) the City's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (ECF No. 100); and (v) Aberra's response in opposition to the Motion (ECF No. 105 (the "Response")).  Among the exhibits the City submits in support of the Motion are video footage of the March 9, 2016 incident described below (ECF No. 90-1), the transcript of Aberra's May 11, 2017 examination pursuant to N.Y. General Municipal Law § 50(h) (the "50(h) Testimony") (ECF No. 99-7), and the audio recording of Aberra's 911 call on March 9, 2016 (ECF No. 99-8).

[2] The Court recognizes Aberra's over 15 years of service in the New York National Guard.  (ECF Nos. 88 ¶ 8; 99-7 at 9; 99-9 at 3).

[3] ECF No. 90-1 consists of two videos, one facing the reception desk and the entrance to the hallway, the view of which is obstructed by a shoulder-height cubicle wall, (CAM01_201603092510_17438515.avi ("Video 1")), and one at the opposite end of the hallway, looking up the hallway. (CAM05_20160309132500_1745451406.avi ("Video 2")).

[4] The name of the woman involved in the incident is not apparent from the SAC or the Motion, but Aberra has attached to his Response a Notice of Judgment in the amount of $7,757.50 that he obtained from New York City Civil Court against her on April 25, 2019.  (ECF No. 105 at 27–28 (the "Judgment")).  Although the Judgment indicates her full name, the Court will refer to her by her initials, "H.M."

(Video 2) at 1:15:19–1:25:24).  Aberra asserts that she "came to an abrupt halt as her right shoe had come off."  (ECF No. 105 at 4 ¶¶ 9–10).  Aberra apologized to H.M.  (ECF Nos. 88 ¶ 12; 99-7 at 25; 99-8 at 1:15–1:36).  In Video 1, because of the partial cubicle wall, the view of the lower half of Aberra's and H.M.'s bodies as they made contact is obstructed, and in Video 2 the view is partially obstructed and from a distance as they entered the hallway, facing toward the camera.  (ECF No. 90-1 (Video 1 & Video 2)).  Aberra admits in the SAC, and the video reflects, that the front of his body came into physical contact with the back of H.M.'s body for approximately one or two seconds.  (ECF Nos. 88 ¶ 12; 90-1 (Video 1) at 1:25:21–1:25:22; 90-1 (Video 2) at 1:25:19–1:25:22; 99-8 at 0:45–0:48 ("I accidentally ran into a person"), 1:20–1:23 ("I kind of run into her")).  In his 50(h) Testimony and in his Response, however, Aberra denied that he had any physical contact with H.M.  (ECF Nos. 99-7 at 23, 44; 105 at 4 ¶ 10).

Other Grant Associates staff members observed the incident.  (ECF Nos. 90-1 (Video 1) at 1:25:34; 90-1 (Video 2) at 1:25:19–1:25:23; 99-8 at 1:30–1:36).  After Aberra walked down the hallway, H.M. remained standing at the entrance to the hallway where the incident had occurred, as several other staff members approached her.  (ECF Nos. 90-1 (Video 1) at 1:25:24–1:25:55); 90-1 (Video 2) at 1:25:25–1:25:29).  Aberra walked back to where H.M. was standing, and a male staff member told Aberra, "I saw what you did."  (ECF Nos. 90-1 (Video 1) at 1:55:55; 90-1 (Video 2) at 1:25:29–1:25:50; 99-7 at 20; 99-8 at 1:30–1:32).  Aberra became "irate at the accusation," and called 911.  (ECF Nos. 99-7 at 26; 99-8).  He told the 911 operator that he had "accidentally run into a person," and that staff members were harassing him and accusing him of sexual misconduct.  (ECF No. 99-8 at 0:42–0:48, 1:15–1:36; see ECF No. 88 ¶¶ 11–12 ("he had accidentally come in contact with her")).  He stated that he was being terminated from his job

placement program, so he wanted a police report so he could sue Grant Associates. (ECF No. 99-8 at 0:52–1:07).

Officers with the New York City Police Department ("NYPD") arrived at the scene, and Aberra approached them to ask for help. (ECF No. 99-7 at 34). Although Aberra wanted the NYPD officers to take his complaint, they did not do so, and spoke instead to H.M. and her co-workers. (ECF Nos. 88 ¶¶ 13–14; 99-7 at 40). H.M. told the NYPD officers that Aberra came "from behind her and gr[ou]nd his hips against her buttocks . . . ." (ECF Nos. 99-9 at 3; 99-10 at 2). H.M. stated that the "contact was not wanted." (ECF Nos. 99-9 at 3; 99-10 at 2). One of the male co-workers spoke to the NYPD officers and corroborated H.M.'s description of the incident. (ECF Nos. 99-7 at 32; 99-9 at 3–4). The NYPD officers also reviewed the video surveillance showing the incident. (ECF No. 88 ¶ 15). Aberra was then arrested for sexual abuse in the third degree, N.Y. Penal Law § 130.55, and harassment in the second degree, N.Y. Penal Law § 240.26. (ECF No. 99-10 at 2).

Following his arrest, Aberra was arraigned on a misdemeanor complaint signed by NYPD Officer Diana Florenciani[5] on charges of forcible touching in violation of N.Y Penal Law § 130.52 and sexual abuse in the third degree in violation of N.Y. Penal Law § 130.55. (ECF Nos. 88 ¶¶ 18–19; 99-11). Aberra was in custody for 18–20 hours before his arraignment. (ECF No. 99-7 at 48). He entered a plea of not guilty to the charges and was released on his own recognizance. (ECF No. 88 ¶ 19). Aberra appeared at three subsequent court conferences, at the last of which on December 20, 2016, on motion of the District Attorney, both charges were dismissed and his case

---

[5] Officer Florenciani was promoted and changed her last name after this action commenced. The Court will refer to her as Sergeant Ingram throughout the remainder of this Report and Recommendation.

was sealed.  (ECF No. 99-12 at 2).  Aberra alleges in the SAC that Justice Pandit-Durant, who presided at the December 20, 2016 conference, dismissed the charges after reviewing the video of the incident, an assertion for which the City claims there is no evidence.  (ECF Nos. 88 ¶ 19; 109 at 14).

On March 12, 2019, Aberra filed an action against H.M. in New York City Civil Court for Small Claims.  (ECF No. 105 at 25–28).  After H.M. did not appear for the scheduled court conference on April 25, 2019, the court arbitrator entered the Judgment against H.M. and in favor of Aberra in the amount of $7,757.50.  (Id. at 27).

**B.  Procedural Background**

On February 8, 2018, Aberra through counsel, Lawrence Lewis, Esq., filed this action initially naming only the City as a defendant.  (ECF No. 1).  On June 1, 2018, the City produced to Lewis a copy of Aberra's NYPD arrest report, which contained the names of the arresting officer (Sergeant Ingram) and the supervising sergeant who approved the arrest.  (ECF No. 70 ¶¶ 4–5).

On July 13, 2018, Aberra, still represented by Lewis, filed a first amended complaint ("FAC"), adding Sergeant Ingram as a defendant and alleging claims of false arrest and imprisonment, negligence, and "emotional and physical pain and suffering."  (ECF No. 23).

On August 17, 2018, the City served Aberra with its initial disclosures pursuant to Federal Rule of Civil Procedure 26(a) (the "Initial Disclosures"), in which the City listed the names of the NYPD officers who were present at Aberra's arrest as potential witnesses whom the City might use to support its defenses.  (ECF Nos. 70 ¶¶ 7–8; 70-1).  After the City served its Initial Disclosures, Aberra chose not to amend the FAC to add as defendants any of the other officers identified in the Initial Disclosures.  (ECF No. 68-1 at 2).

On November 21, 2018, the City filed a proposed stipulation of voluntary dismissal as to Aberra's claims against Sergeant Ingram, executed by Lewis and counsel for the City (ECF No. 38), which the Honorable Lewis A. Kaplan so-ordered on November 26, 2018 (the "Stipulation").  (ECF No. 40).  The same day, the City also filed a status letter (in which Lewis did not join) (the "November 2018 Letter").  (ECF No. 39).  The November 2018 Letter asserted that the parties had reached a settlement agreement, and "[a]s part of the agreement, plaintiff agreed to first voluntarily dismiss all claims against [Sergeant Ingram] . . . with prejudice."  (Id. at 1).  The letter continued, "[u]pon endorsement [of the Stipulation] by the Court, the parties will subsequently file a Stipulation of Dismissal with respect to defendant City."  (Id.)

On November 27, 2018, the City mailed Lewis a proposed stipulation of dismissal as to Aberra's claims against the City as well as a general release and a draft agreement (the "Draft Settlement Agreement") that purportedly evidenced the terms the City and Lewis had orally negotiated (the "Oral Settlement Agreement").  (ECF Nos. 67 ¶ 11; 68-2; 68-3).  The Oral Settlement Agreement contemplated that the City would pay Aberra $400 in exchange for the "dismissal of all the claims against the defendant" (which was not defined), and for a "release [as to] defendant City of New York."  (ECF No. 68-3 at 4).  Neither Lewis nor Aberra executed a stipulation of dismissal as to the City, the general release, or the Draft Settlement Agreement, and neither otherwise responded to the City's email.  (ECF No. 66 at 6–7).

The City represented to this Court that, on January 28, 2019, Lewis informed the City that Aberra had terminated him as his attorney.  (ECF Nos. 66 at 7; 67 ¶ 12).  The City also represented to the Court that, on April 1, 2019, Lewis again told the City's counsel that he was no longer representing Aberra and intended to withdraw as counsel.  (ECF No. 44 at 2).  On November 25,

2019, Aberra informed the City that he intended to proceed pro se.  (Id. at 3).  On December 4, 2019, the Court ordered Lewis to file a notice of withdrawal, but he has not done so.  (ECF No. 45).

On December 16, 2019, Aberra, now pro se, filed a proposed second amended complaint (ECF No. 48), which the Court construed as a motion for leave to amend to:  (1) restore Sergeant Ingram as a defendant; (2) add three new John Doe defendants (the other NYPD officers present at the 2016 Arrest); (3) add allegations concerning damages and remedies; and (4) amend the monetary demand for each cause of action.  (ECF No. 49).  On December 18, 2019, the Court ordered the City to respond to Aberra's filing.  (Id.)

On February 27, 2020, the City filed a motion to enforce the Oral Settlement Agreement (the "Motion to Enforce").  (ECF No. 65).  On July 31, 2020, the Court issued a Report and Recommendation recommending that the Motion to Enforce be denied and Aberra be granted leave to amend only to supplement his allegations as to damages and remedies.  (ECF No. 84 (the "July 31 R&R")).  On August 24, 2020, Judge Kaplan issued an order adopting the July 31 R&R, denying the City's Motion to Enforce and granting Aberra leave to amend his damages and remedies allegations.  (ECF No. 86).  On August 26, 2020, the Court ordered Aberra to file his amended pleading in accordance with the instructions in the July 31 R&R.  (ECF No. 87).

On September 24, 2020, Aberra filed the SAC.  (ECF No. 88).  He asserts a single § 1983 municipal liability claim against the City, which he alleges "was negligent in failing to educate[] and instruct [its] police officers on how to make a complete and competent police assessment and investigation of a potential crime BEFORE they make an arrest such as the one involving the Plaintiff."  (ECF No. 88 ¶ 26).  He asserts that the video footage "clearly showed that [he] had not

committed a sexual assault and should have thereby nullified any notions of 'probable cause' that le[]d to a wrongful arrest." (Id. ¶ 23). He contends that, had the City not been negligent, "competent assessment and complete investigation of the 911 call placed by the Plaintiff rather than unreliable and biased third-party testimonies" would have shown that there was not probable cause to arrest him. (Id. ¶¶ 24–25). Aberra alleges that the arrest and subsequent criminal proceedings exacerbated his pre-existing asthma, caused emotional and psychiatric disorders, prevented him from "obtain[ing] gainful employment in his chosen field" of emergency and crisis management, and precluded him from engaging in foster parenting or applying for adoption. (Id. ¶¶ 30–34).

On January 26, 2021, the City filed the Motion, which included a notice to Aberra pursuant to Local Civil Rule 56.2 stating that:

> [T]he defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits and/or other documents as required by Rule 56(e) of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 . . . In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising material issues of fact for trial . . . If you do not respond to the motion for summary judgment on time with affidavits and/or documentary evidence contradicting the material facts asserted by the defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

(ECF No. 98-1). The City also filed a statement of undisputed facts in support of the Motion, pursuant to Local Civil Rule 56.1. (ECF No. 100).

On March 3, 2021, Aberra filed the Response, to which he attached several documents, including the complaint and arrest forms, an excerpt from his 50(h) Testimony, his Notice of Claim form, the Judgment against H.M., and correspondence regarding the video footage of the incident. (ECF No. 105 at 14–32). Aberra did not submit a counterstatement pursuant to Local Civil Rule 56.1, but in the Response lists several "misstatements and omissions" in the City's Motion. (ECF No. 105 at 2).

On April 2, 2021, the City filed its reply. (ECF No. 109).

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Ent., 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"In applying this standard, a court accepts as true all well-pled factual allegations but does not credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" Gottesfeld v. Anderson, No. 18 Civ. 10836 (PGG), 2020 WL 1082590, at *4 (S.D.N.Y. Mar. 6, 2020) (quoting Iqbal, 556 U.S. at 678). The Court shall not give "effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121

(2d Cir. 2007).  "Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not 'nudged [plaintiff's] claims across the line from conceivable to plausible' – dismissal is appropriate."  Gottesfeld, 2020 WL 1082590, at *4 (quoting Twombly, 550 U.S. at 570).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.'"  Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  For a document to be integral to the complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[] in framing the complaint.'"  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

In deciding a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  Despite that consideration, "a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face."  Gottesfeld, 2020 WL 1082590, at *5.  Despite the Court's obligation "to draw the most favorable inferences" from a complaint, it "cannot invent factual allegations that [the plaintiff] has not pled."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

### B. Motion for Summary Judgment

"When a motion relies on matters outside the pleadings, the Court may convert a motion to dismiss into a motion for summary judgment," provided the parties have notice. Fernandez v. City of New York, No. 19 Civ. 4021 (MKV), 2020 WL 4605238, at *2 (S.D.N.Y. Aug. 11, 2020). "Summary judgment is warranted where the moving party shows that 'there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" Gottesfeld, 2020 WL 1082590, at *5 (quoting Fed. R. Civ. P. 56(a)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilber v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Mags., Inc., 936 F.2d 112, 116 (2d Cir. 1991).

In deciding whether summary judgment is warranted, the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001). To avoid summary judgment, a plaintiff "must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Mere

conclusory statements, conjecture or speculation" by the plaintiff is not sufficient to defeat summary judgment.  Gross v. Nat'l Broad. Co., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

"Although the same standards apply when a pro se litigant is involved, 'the pro se litigant should be given special latitude in responding to a summary judgment motion.' . . . [T]he Court must liberally construe the claims of a pro se litigant."  Brown v. Selwin, 250 F. Supp. 2d 299, 306–07 (S.D.N.Y. 1999), aff'd, 29 F. App'x 762 (2d Cir. 2002) (quoting Shepherd v. Fraisher, No. 96 Civ. 3283 (JGK), 1999 WL 713839, at *2 (S.D.N.Y. Sept. 14, 1999) (internal citation omitted)).  Local Civil Rule 56.2 requires "[a]ny represented party moving for summary judgment against a party proceeding pro se [to] serve and file as a separate document" a notice, like the one the City filed in this case, attaching the text of Rule 56 and Local Civil Rule 56.1.  Local Civ. R. 56.2.

### C.  Municipal Liability

"A plaintiff asserting a claim under 42 U.S.C. § 1983 must show that, 'while acting under color of state law, Defendants deprived him of a federal constitutional or statutory right.'"  Vasquez v. Cnty. of Rockland, No. 13 Civ. 5632 (SLC), 2020 WL 883514, at *6 (S.D.N.Y. Feb. 24, 2020) (quoting Blackson v. City of New York, No. 14 Civ. 462 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014)).

"To prove municipal liability against the City of New York, [a plaintiff] must establish that action pursuant to official municipal policy caused his alleged constitutional injury."  Vasquez, 2020 WL 883514, at *7 (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee."  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly

attributable to the municipality.  The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 404 (1997).

"[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." <u>East Haven</u>, 691 F.3d at 81; <u>see</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [] policy [] [that] can be attributed to a municipal policymaker.").   "On the other hand," unconstitutional acts by non-policymaking employees may justify municipal liability if "they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from deliberate indifference of supervisory officials to such abuses." <u>East Haven</u>, 691 F.3d at 81.   "A plaintiff alleging that []he has been injured by the actions of a low-level municipal employee can establish municipal liability by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." <u>Id.</u>

"A municipal policymaking official's 'deliberate indifference' to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under [§] 1983." <u>East Haven</u>, 691 F.3d at 81 (quoting <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 126, 127 n.8 (2d Cir. 2004)).   "To establish deliberate indifference[,] a plaintiff must show that a

policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."  Id. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Brown, 520 U.S. at 410.  The Second Circuit has "held that demonstration of deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent."  East Haven, 691 F.3d at 81.

"[T]here must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989)).  Finally, "[f]ailure to establish an underlying constitutional violation necessarily defeats a Monell claim."  Vasquez, 2020 WL 883514, at *7; see Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors, and, in addition, that their commission of the tort resulted from a custom or policy of the municipality.").

### D.  False Arrest

"Under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, . . . the people are 'to be secure in their persons . . . against unreasonable searches and seizures . . . .'"  Maryland v. Pringle, 540 U.S. 366, 369 (2003) (quoting U.S. CONST. amend. IV) (internal citation omitted).   "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); see Ali v. City of New York, No.

11 Civ. 5469 (LAK), 2012 WL 3958154, at *1 (S.D.N.Y. Sept. 5, 2012) ("The standards governing claims of unconstitutional arrest under [§] 1983 are identical to those applicable to state law false arrest claims."). "To state a claim of false arrest or imprisonment, a plaintiff must allege that '(1) the defendant intended to confine him [or her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Jones v. City of New York, No. 13 Civ. 929 (ALC), 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (quoting Sinagra v. City of New York, 7 N.Y.S.3d 286, 288 (N.Y. App. Div. 2015)).

"The existence of probable cause for the arrest is a complete defense" to a false arrest claim. Ali, 2012 WL 3958154, at *1; see Mitchell v. City of New York, 841 F.3d 72, 77 (2d Cir. 2016). "[P]robable cause is not a high standard, and 'requires only the possibility of criminal activity or the possibility that evidence of a crime will be found.'" Ali, 2012 WL 3958154, at *3 (internal citations omitted). "[P]robable cause exists when officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Bayne v. Provost, No. 04 Civ. 44, 2005 WL 1871182, at *6 (N.D.N.Y. Aug. 4, 2005) (quoting Posr v. Ct. Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004); see Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001) ("For Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in light of the particular circumstances confronting the officer at the time."). "[T]he eventual disposition of the criminal

charges is irrelevant to the probable cause determination." Bayne, 2005 WL 1871182, at *6

(quoting Hahn v. Cnty. Of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir.

1995)).

"Police officers may rely upon information gained from other officers in making their

probable cause assessment," as well as "on information gained from witnesses or private

citizens." Bayne, 2005 WL 1871182, at *6. "The fact that a complaining witness has identified

herself, as opposed to remaining anonymous, is an important factor in assessing the weight

officers may reasonably put on information received from private citizens." Id. "If policemen

arrest a person on the basis of a private citizen's complaint that if true would justify the arrest,

and they reasonably believe it is true, they cannot be held liable . . . merely because it later turns

out that the complaint was unfounded." Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997) (quoting

McKinney v. George, 726 F.2d 1183, 1187 (7th Cir.1984)); see Caldarola v. Calabrese, 298 F.3d

156, 165 (2d Cir. 2002) ("[W]hen an average citizen tenders information to the police, the police

should be permitted to assume that they are dealing with a credible person in the absence of

special circumstances suggesting that might not be the case." (quoting United States v. Fooladi,

703 F.2d 180, 183 (5th Cir. 1983)).  And "once a police officer has probable cause, he [or she]

need not explore 'every theoretically plausible claim of innocence before making an arrest.'"

Bayne, 2005 WL 1871182, at *6 (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d

Cir. 1997)); see Panetta v. Crowley, 460 F.3d 388, 397 (2d Cir. 2006) ("Once an officer has

probable cause, her or she is 'neither required nor allowed' to continue investigating, sifting and

weighing information." (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)); Curley v.

Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("The arresting officer does not have to prove

plaintiff's version wrong before arresting him . . . [n]or does it matter that an investigation might have cast doubt upon the basis for the arrest.").

In summary,

> [T]he issue in a false arrest case is not whether someone with the benefit of perfect information and of hindsight would think that there was probable cause at the time of the arrest.  It is whether a reasonably cautious person in the position of the individual who made the arrest, at the time he or she made it, would have been justified in believing that an offense had been or was being committed by the person being arrested.

Ali, 2012 WL 3958154, at *4.

## IV. DISCUSSION

### A. Conversion to Summary Judgment

The City styled its Motion as one for dismissal under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56.  (ECF No. 101 at 6).  The City submitted a Local Civil Rule 56.1 Statement and exhibits, along with the required notice under Local Civil Rule 56.2.  (ECF Nos. 98-1, 100).  In his Response, Aberra indicated which facts he disputes, and submitted some supporting exhibits of his own.  (ECF No. 105).  The Court may deem Aberra's statements on the second through sixth pages of his Response as his "counter-statement of facts for the purpose of Rule 56.1."  See Fernandez, 2020 WL 4605238, at *1 (accepting pro se plaintiff's statements in opposition brief as counterstatement of facts under Rule 56.1).  The City also provided the requisite Local Civil Rule 56.2 notice to Aberra that it would seek summary judgment in the alternative, and Aberra confirmed "that he was aware of the heightened requirements for summary judgment motions" by indicating the disputed facts and attaching exhibits.  Id. at *4.  Accordingly, I respectfully recommend that the Motion be converted to one for summary judgment.  See id.

B. **Municipal Liability**

    1. **Policy or custom**

As the City correctly notes, in the SAC, Aberra does not specify any policy by the City that led to his arrest, nor does he "allege that any municipal policymaker took an action or made a decision that caused a violation of [his] rights." (ECF No. 101 at 10). Rather, the SAC focuses on his single arrest on March 9, 2016, without any "proof that it was caused by an existing, unconstitutional municipal policy[] [that] can be attributed to a municipal policymaker." Tuttle, 471 U.S. at 823–24. But, even if his arrest did violate the Fourth Amendment, a single incident of a constitutional violation "is insufficient to create liability under Monell." Mitchell, 841 F.3d at 80 (quoting Fenner v. City of New York, No. 08 Civ. 2355 (BMC) (LB), 2009 WL 5066810, at *4 (E.D.N.Y. Dec. 21, 2009), aff'd, 392 F. App'x 892 (2d Cir. 2010)). Because he has "proffered no evidence to show that the arrest[] occurred pursuant to a city policy or practice," Aberra has failed to establish the City's liability under Monell. Id.

To the extent that Aberra intended his references to the City's negligence or carelessness in training police officers to assert a policy or practice, this also fails to establish Monell liability. (ECF No. 88 ¶¶ 22, 24, 26). That is because "mere[] negligen[ce]" is insufficient to demonstrate "deliberate indifference" to unconstitutional actions; rather, Aberra was required to show that City policymaking officials were "aware of [Sergeant Ingram's] unconstitutional actions and consciously chose to ignore them." East Haven, 691 F.3d at 81. In the SAC and the Response, Aberra has failed to meet the "stringent standard of fault" required to prove that the City was deliberately indifferent for purposes of Monell. Brown, 520 U.S. at 410.

2. **Underlying constitutional violation**

In addition, Aberra has not established an underlying violation of the Fourth Amendment, and therefore, his "claim based on 'municipal liability under <u>Monell</u> cannot survive . . . .'" <u>Vasquez</u>, 2020 WL 883514, at *14 (quoting <u>Blue v. City of New York</u>, No. 14 Civ. 7836 (VSB), 2018 WL 1136613, at *18 (S.D.N.Y. Mar. 1, 2018)).  As set forth above, "[t]he existence of probable cause . . . is a complete defense" to a false arrest claim.  <u>Ali</u>, 2012 WL 3958154, at *1.  The question then, is whether "a reasonably cautious person" in Sergeant Ingram's position, "at the time [] she" arrested Aberra, "would have been justified in believing that" he had committed an offense.  <u>Id.</u>  The Court finds that Sergeant Ingram was justified in believing that Aberra committed the offenses for which he was arrested.

Aberra was arrested on two charges: third degree sexual abuse, and second degree harassment.  (ECF Nos. 99-10 at 2; 105 at 15).  Third degree sexual abuse involves "subject[ing] another person to sexual contact without the latter's consent."  N.Y. Penal Law § 130.55.  Second degree harassment is found:

> when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or 2. He or she follows a person in or about a public place or places; or 3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

N.Y. Penal Law § 240.26.

When she arrested Aberra on these two charges, Sergeant Ingram had the following information.  First, H.M. told Sergeant Ingram that Aberra came up "behind" her and "gr[ou]nd his hips against her buttocks."  (ECF Nos. 99-10 at 2; 105 at 15).  This statement of the complaining witness was sufficient information for Sergeant Ingram to have probable cause to believe that

Aberra had subjected H.M. to sexual contact without her consent, as well as physical contact intended to harass, annoy, or alarm her.  See Curley, 268 F.3d at 69–70 (affirming summary judgment for defendants on false arrest claim where statements from alleged assault victims established probable cause); Rizzo v. Edison, Inc., 172 F. App'x 391, 393 (2d Cir. 2006) ("[A] purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest.") (internal citation omitted); Keith v. City of New York, No. 11 Civ. 3577 (KPF), 2014 WL 6750211, at *17 (S.D.N.Y. Dec. 1, 2014) (granting summary judgment for defendants on false arrest claim where victim's identification of plaintiff in lineup established probable cause); Carthew v. Cnty. of Suffolk, 709 F. Supp. 2d 188, 201 (E.D.N.Y. 2010) (granting summary judgment for defendants on false arrest claim where statement from alleged harassment victim established probable cause).

Second, Sergeant Ingram had the statement of H.M.'s co-worker, who witnessed the incident.  (ECF No. 99-9 at 3; see ECF Nos. 99-7 at 20; 99-8 at 1:30–1:32).  Eyewitness "statements alone" can provide "probable cause to arrest."  Moreno v. City of New Haven Dep't of Police Serv., 604 F. Supp. 2d 364, 373 (D. Conn. 2009) (granting summary judgment for defendants dismissing false arrest claim where witness statements provided probable cause); see Carson v. Lewis, 35 F. Supp. 2d 250, 259–60 (E.D.N.Y. 1999) (explaining that eyewitness identifications generally give rise to probable cause).  H.M.'s co-worker not only witnessed the incident, but also corroborated her statement that the physical contact she had with Aberra was unwanted.  See Escalera v. Lunn, 361 F.3d 737, 747 (2d Cir. 2004) (noting that witnesses' corroboration of victim's allegations supported probable cause to arrest); Ladoucier v. City of New York, No. 10 Civ. 5089 (RJH), 2011 WL 2206735, at *3 (S.D.N.Y. June 6, 2011) (same); see also Crawford v. City of New

York, 477 F. App'x 777, 780 (2d Cir. 2012) (finding that single witness's corroboration of victim's statement supported probable cause).

In addition, there is no suggestion that Aberra was somehow misidentified, or that the co-worker was otherwise incorrect; indeed, Aberra admits that the co-worker said, immediately after the incident, "I saw what you did." (ECF Nos. 99-7 at 20; 99-8 at 1:30–1:32). Nor does Aberra's assertion in his Response that he did not make contact with H.M. (ECF No. 105 at 2) — notwithstanding his prior admissions that he did have contact with her (see ECF Nos. 88 ¶ 12; ECF No. 99-8 at 0:36–0:51) — undercut the co-worker's corroboration. That is because a party's contradiction of his own prior statements cannot defeat summary judgment, see In re Fosamax Prods. Liab. Litig., 707 F.3d 189, 193–94 (2d Cir. 2013), and because the possibility that the co-worker may have misunderstood or misinterpreted the nature of the interaction does not defeat a finding of probable cause. See Batson-Kirk v. City of New York, No. 07 Civ. 1950 (KAM) (JMA), 2009 WL 1505707, at *7 (E.D.N.Y. May 28, 2009) (explaining that possibility that eyewitness's statement was "inaccurate[]" or "otherwise mistaken" did not defeat finding of probable cause for arrest); see also Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (explaining that probable cause may be based on mistaken information as long as police acted reasonably and in good faith). Likewise, the fact that the co-worker told Aberra, immediately after the incident and before the NYPD arrived, that he had seen what Aberra "did" rebuts Aberra's suggestion that H.M., the co-worker, and Sergeant Ingram created a "false narrative" on which his arrest was based. (ECF No. 105 at 9). Accordingly, the co-worker's statement provides additional support for the finding of probable cause to arrest Aberra.

Third, Sergeant Ingram viewed the video footage of the incident.  (ECF Nos. 88 ¶ 15; 90-1; 99-9 at 3).  The videos show him making contact with H.M. from behind, putting his arms out to the sides, and moving to her right and down the hall, while H.M. clearly stops and looks at him, consistent with him bumping into her in a way that made her uncomfortable.  (ECF Nos. 90-1 (Video 1) at 1:25:21–1:25:27; 90-1 (Video 2) at 1:25:19–1:25:25).  The video footage, therefore, "quite clearly contradicts the version of the story" that he now asserts in his Response (ECF No. 105 at 2, 9), and therefore does not create a genuine issue of material fact to defeat summary judgment.  Scott v. Harris, 550 U.S. 372, 377–80 (2007).

Finally, Aberra's assertions that Sergeant Ingram "refused to take into account" his version of the incident does not negate the Court's conclusion that probable cause existed.  (ECF No. 88 ¶ 14; see ECF No. 105 at 9–10).  That is because "the arresting officer does not have to prove plaintiff's version wrong before arresting him."  Curley, 268 F.3d at 70.  "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest."  Id.  Instead, "[o]nce a police officer has a reasonable basis for believing there is probable cause, [s]he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Ricciuti, 124 F.3d at 128; see Panetta, 460 F.3d at 395 ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause.") (quoting United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985)); Keith, 2014 WL 6750211, at *16–17 (rejecting argument that police officers were required to undertake additional investigation of plaintiff's version of events).  Other than his own contradictory statements, Aberra does not point to any circumstances that "objectively . . . merit doubting [H.M.'s] reliability or veracity," and therefore,

Sergeant Ingram was "not required to conduct further investigation in order to establish probable cause" at the scene.  Id. at *16.

Accordingly, the "totality of the circumstances" available to Sergeant Ingram at the time of Aberra's arrest demonstrate that there was probable cause, and therefore, no Fourth Amendment violation occurred.  See Panetta, 460 F.3d at 396–99 (internal citation omitted).  The absence of an underlying constitutional violation therefore provides an additional basis to grant summary judgment dismissing the Monell claim against the City.  See Frost v. City of New York, No. 15 Civ. 4843 (NRB), 2019 WL 1382323, at *2 (S.D.N.Y. Mar. 27, 2019) (granting summary judgment dismissing Monell claim where underlying constitutional claims were dismissed).[6]

\*       \*       \*

For each of these reasons, I respectfully recommend that summary judgment dismissing Aberra's § 1983 municipal liability claim be GRANTED.  In making this recommendation, I do not "minimize the disruptions" — personal, professional, physical, and emotional — "occasioned by [Aberra's] arrest."  Keith, 2014 WL 6750211, at *22.  The facts remain, however, that a victim of unwanted contact with Aberra identified him, with corroboration by his own statements to the 911 operator, the statement of an eyewitness, and video footage.  It was permissible for the

---

[6] The record does not indicate whether Sergeant Ingram was aware of Aberra's statement to the 911 operator that he had "accidentally run into" H.M. (ECF No. 99-8 at 0:36–0:59, 1:15–1:37).  Therefore, the Court does not deem it to be information that Sergeant Ingram had when she made her probable cause determination.  Nevertheless, Aberra's assertion that calling 911 is "something that guilty people do not do" (ECF No. 105 at 9) does not undermine the finding of probable cause based on all of the other information Sergeant Ingram had available to her when she arrived at the scene.  See Carthew, 709 F. Supp. 2d at 197 (holding that "the fact that plaintiff called 911 first" did not create a genuine issue of fact to defeat summary judgment where the information the victim provided to the officer at the scene supported the finding of probable cause); McNamara v. City of New York, No. 06 Civ. 5585 (LTS) (FM), 2009 WL 735135, at *6 (S.D.N.Y. Mar. 20, 2009) (granting summary judgment for defendants dismissing false arrest claim and explaining that the fact that plaintiff called 911 first did not undermine finding of probable cause).

NYPD to rely on all of these circumstances in concluding that there was probable cause to arrest Aberra for third degree sexual abuse and second degree harassment, and the fact that the charges were later dismissed does not undermine the existence of probable cause at the time of the arrest.

### C. Supplemental Jurisdiction

Aberra's SAC does not expressly indicate whether he asserts parallel claims for false arrest under state law. (See ECF No. 88). To the extent his pleading may be construed as asserting a state law false arrest claim, however, I respectfully recommend that, in light of the dismissal of his only federal claim, it is appropriate to decline to exercise supplemental jurisdiction over such a claim and dismissal without prejudice would be appropriate. See Keith, 2014 WL 6750211, at *22 (declining to exercise supplemental jurisdiction over state law claims where federal claims were dismissed).

### V. CONCLUSION

For the reasons set forth above, I respectfully recommend that: (i) the Motion be converted to one for summary judgment and GRANTED; (ii) Aberra's § 1983 municipal liability claim against the City be DISMISSED with prejudice, and (iii) any state law claim be DISMISSED without prejudice.

Dated:      New York, New York
            June 30, 2021

_____
SARAH L. CAVE
United States Magistrate Judge

*                             *                             *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Aberra does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from the City's counsel.  See Local Civ. R. 7.2.